Warren B. WILSON, Plaintiff,

v.

O. Meredith WILSON, Jr. et al., Defendants.

Civ. No. 75-754.

United States District Court,
D. Oregon.

June 28, 1976.

Charles O. Porter, Eugene, Ore., for plaintiff.

Jonathan A. Ater, Lindsay, Nahstoll, Hart & Krause, Portland, Ore., for defendants.

## OPINION

Before WRIGHT, Circuit Judge and TAYLOR and THOMPSON, District Judges.

### PER CURIAM.

In this Section 1983 action [42 U.S.C. § 1983], plaintiff challenges the constitutionality of certain Oregon statutes, Supreme Court rules, and requirements of the state's Board of Bar Examiners, pertaining to application for admission to the Oregon State Bar.

The facts are not in dispute. Plaintiff resides part-time on his farm in Gold Hill, Oregon, and part-time in Oakland, California. He is an active member of the California bar. Defendants are members of the Board of Governors of the Oregon State Bar, members of the Board of Bar Examiners, and justices of the Oregon Supreme Court.

Plaintiff seeks to practice law both in California and Oregon. He has no intention to establish full-time residence in Oregon.

In 1974 and 1975, plaintiff applied for admission to the Oregon bar. He was allowed to take the 1974 bar examination but was denied admission because of noncompliance with examination regulations. This denial was upheld by the federal district court in its unpublished opinion of January 24, 1975. *Wilson v. Wilson,* Civ. No. 74–521 (D.Ore.).

Plaintiff's 1975 application was denied for three reasons:

(1) He failed to properly answer a question on the application form concerning the existence of any expunged offenses on his record;

(2) He refused to sign a statement prospectively exonerating from liability any person who provided the Board of Bar Examiners with information bearing on his application for admission;

(3) He failed to indicate on the application his intent to meet Oregon's residency requirements as of the time of admission.

Plaintiff asserts jurisdiction under Title 28 U.S.C. §§ 1343(3), and Title 42 U.S.C. § 1983. He alleges in the alternative: (1) defendants have exceeded the permissible scope of statutory or regulatory authority; or (2) the Oregon statutes and rules violate his rights of equal protection, procedural and substantive due process, and interstate travel. He seeks both injunctive and declaratory relief.

Defendants ask, alternatively, that we either award judgment for them and dismiss all claims or abstain from reaching them because of the possibility that state court interpretation could render unnecessary any federal constitutional adjudication.

## I.

### EXPUNGED OFFENSES

In its standard application form the organized bar asks whether an applicant has ever been accused of, charged with, or arrested or detained for, the violation of any state, federal, municipal or other law, statute or ordinance, including juvenile or expunged offenses.

Plaintiff struck the words "or expunged," and answered "No."

Plaintiff asserts that the requirement to disclose expunged offenses either "has no basis in any statute or rule of the Oregon Supreme Court," or has no rational relation to a legitimate state purpose.

O.R.S. § 9.220(2) requires that those admitted to the bar must be of "good moral

character, which may be proved by any evidence satisfactory to the [state supreme] court." O.R.S. § 9.210 and Oregon Supreme Court Rule 1.30 together give to the Board of Bar Examiners authority to investigate candidates, including certainly the power to demand disclosure of relevant information on an application form.

Information regarding expunged offenses is clearly relevant to (although not necessarily determinative of) the moral character of an applicant. Determination of moral character is without question a legitimate state purpose in the context of a professional licensing scheme. The demand for disclosure of expunged offenses is a rational and reasonable method by which to promote this state purpose. It scarcely violates plaintiff's constitutional rights.

The Board's decision to deny plaintiff's application because of his failure to consent to the exoneration provision was a reasonable one. As we have already discussed, the Board has authority under O.R.S. § 9.210 and Rule 1.30 to investigate applicants for determination of moral character. Consistent with this authority, the Board may require an applicant to exonerate those providing information to the Board "from liability of any kind," so as to promote full disclosure of information relevant to the Board's investigation.[1]

As a means of facilitating full inquiry into the moral character of bar applicants, the requirement to sign an exoneration clause is eminently reasonable. Its presence constitutes a denial of neither due process nor equal protection.

## II.

### THE "PROSPECTIVE EXONERATION" CLAUSE

The signature page of the application form contains printed language authorizing the Oregon State Bar and its agents to investigate the applicant's character and fitness, and adds this clause:

> I hereby release and exonerate those so authorized and any person or organization supplying requested information from liability of any kind resulting from the investigation or from furnishing information. . . .

Plaintiff struck the portion quoted above, then signed the application.

## III.

### RESIDENCY REQUIREMENT

In the pre-trial order we find the following agreed facts:

7. ORS 9.220(1) provides:

> "An applicant for admission as attorney must apply to the Supreme Court and show that he or she: (1) is a citizen . . . of this state. . . ." Defendants interpret this statute to require that an applicant state that he is a resident of Oregon at the time of his admission and that prior to admission the applicant state his intention to be a resident at the time of admission. Rules 1.10, 1.15.[2]

1. O.R.S. § 9.550(2) provides immunity for those who have "given information or testimony relative to a . . . proposed or pending contested admission. . . ." The present statute appears to be a broader grant of immunity than its earlier version, which immunized only those acting in "good faith." *See* Ramstead v. Morgan, 219 Or. 383, 347 P.2d 594 (1959); Linde, *Public Law—1960 Oregon Survey*, 40 Ore.L.Rev. 249, 269–73 (1961).

However, it is not clear that the present statute grants absolute immunity. For example, the statute excepts from its grant of immunity one who commits perjury. Arguably, then, one who commits perjury when giving "testimony relative to a . . . proposed or pending

contested admission" would be subject to a civil proceeding brought by the allegedly injured applicant.

Since the statute is not clear, defendants' requirement that each applicant exonerate "from liability of any kind" those who provide information to bar investigators is not mere surplusage. Accordingly, there is a rational basis for the requirement.

2. "1.10 Affidavits of residence and citizenship

"No person may be admitted to practice law in Oregon unless he is, at the time of his admission, (a) a resident of Oregon and (b) a citizen of the United States or has declared his intention to become a citizen of the United States.

9. Plaintiff wishes to practice law part-time in Oregon and part-time in California. Plaintiff has no present intention of closing his California office and residence and becoming a full-time resident of and practitioner in Oregon.

Plaintiff alleges that defendants' refusal to file his application because of his expressed intention to engage in dual-state practice, without becoming a "full-time resident" of Oregon, abridges his rights of equal protection and interstate travel.

With the case in its present posture, we emphasize that plaintiff does not, indeed cannot, challenge the requirement of O.R.S. § 9.220(1) that he be a citizen of Oregon at the time of admission to practice. Rather, he challenges the Board's interpretation of that statute to require on his application a statement of intention to be an Oregon resident at the time of admission.[3]

Oregon Supreme Court Rule 3.10 provides in part:

(1) An application for admission on the attorney examination shall be on a form prescribed by the Board of Bar Examiners. . . .

Rule 3.10 then provides that the application "must show" a number of specific items. A statement of "intent to reside" is not included as one of the specified items.

■ However, the words "on a form prescribed by the Board" suggest that so long as the contents of the application are related to the statutory and regulatory objectives, and so long as at least the items specified in Rule 3.10 are included, the precise contents may be determined by the Board in its discretion. The Board may therefore include on its application form questions or statements designed to provide some assurance that an applicant will have the necessary "qualifications for admission," [Rule 1.30], including the necessary residence at the time of admission [O.R.S. § 9.220(1)].

■ We believe the Board of Bar Examiners, in demanding that each applicant sign a statement of "intent to reside," acted within the scope of its authority as provided by O.R.S. § 9.220(1) and Rule 3.10. The question remains whether Section 9.220(1) and Rule 3.10, as interpreted and applied by the Board of Bar Examiners, violate plaintiff's rights of equal protection and due process.

It may be that a requirement of Oregon residence on the date of admission would have to be supported by a compelling state interest. Assuming this is so, a state clearly has a compelling state interest in "promoting the speedy and efficient administration of justice in its courts by assuring the competence and discipline of its bar. . . ." *Aronson v. Ambrose*, 479 F.2d 75, 77 (3rd Cir. 1973). The requirement that new admittees be state residents at the time of admission is a permissible method by which to promote this compelling state interest. *Aronson, supra*, at 77–78; *Brown v. Supreme Court of Virginia*, 359 F.Supp. 549, 556–59 (E.D.Va.), aff'd memo. 414 U.S. 1034, 94 S.Ct. 533, 38 L.Ed.2d 327 (1973); *Suffling v. Bondurant*, 339 F.Supp. 257 (D.N.M.), aff'd memo. 409 U.S. 1020, 93 S.Ct. 460, 34 L.Ed.2d 312 (1972).

■ In this case, however, we are concerned only with the requirement that an applicant express an intent to be an Oregon resident at the time of admission. This requirement does not penalize plaintiff's "constitutional right of interstate travel." *Shapiro v. Thompson*, 394 U.S. 618, 638 n.21,

Each successful applicant must execute a prescribed oath of office stating residence and citizenship qualifications, to be filed with the State Court Administrator at the admission ceremonies, or as provided in Rule 1.15(1) and (2).

"1.15 Oath; admission

"(1) A qualified applicant who does not take the required oath at the time of the regular admission ceremonies may apply to the Chief Justice for permission to take the oath before any person authorized by law to administer oaths in the jurisdiction within which the applicant may be. This application must be accompanied by a statement of the applicant to the effect that the applicant is at the time of admission a resident of Oregon."

**3.** The application is filed several months before the date of admission of successful applicants.

89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). Despite an applicant's expression of intent to reside in Oregon in the future, he or she is under Oregon's statutes and rules free to live and travel wherever he or she chooses prior to admission to the bar. Therefore, we need not determine whether Oregon promotes a compelling state interest by demanding a statement of "intent to reside" on the application form.

Oregon has a legitimate state interest in processing only those bar applications submitted by persons who appear likely to meet admissions requirements. In furtherance of this purpose, Oregon can demand an expression from an applicant of his or her intent to reside in Oregon upon admission to its bar. Similarly, Oregon could refuse to process an application submitted by one who refuses to agree at the time of application that he or she will, if admitted, abide by the rules of the Oregon Supreme Court and of the Board of Governors. In both instances, the requirements are reasonable means of furthering Oregon's legitimate state interest in minimizing its administrative and investigative workload. Accordingly, we see no equal protection or due process violation.

### IV.

### CONCLUSION

Plaintiff has not demonstrated the existence of any statutory violation or constitutional deprivation. Judgment is awarded in favor of defendants.

BRUCE R. THOMPSON, District Judge (concurring):

In the absence of controlling precedent, I would disagree with section III of the opinion dealing with the residency requirement. I am thoroughly in agreement with Justice Douglas' dissenting opinion in *Martin v. Walton*, 368 U.S. 25, 82 S.Ct. 1, 7 L.Ed.2d 5 (1961). That case is, in my view, not distinguishable from the present case and the majority rules.