294 S.E.2d 440

**Jennifer Smart SARGUS**

v.

**WEST VIRGINIA BOARD OF LAW EXAMINERS.**

**No. 15598.**

Supreme Court of Appeals of West Virginia.

July 14, 1982.

Steptoe & Johnson, Herbert G. Underwood and Susan S. Brewer, Clarksburg, for petitioner.

Chauncey H. Browning, Atty. Gen. and Janet Frye Steele, Asst. Atty. Gen., Charleston, for respondent.

Allan Sherry, pro se, Woodsfield, Ohio, amicus curiae.

McHUGH, Justice:

This case is before this Court on a petition for review of the action of the West Virginia Board of Law Examiners, respondent, in denying the application of Jennifer Smart Sargus, petitioner, to become a member of the West Virginia State Bar by examination. Allegedly, petitioner was denied the opportunity to take the February, 1982 bar examination because she had not met the requirement of being a West Virginia resident for more than thirty (30) days prior to taking the examination as prescribed by Rule 1.000 of the *West Virginia Code of Rules for Admission to the Practice of Law.*[1] Petitioner asserts that the residency requirement infringes upon her

---

**1.** Rule 1.000 of the *West Virginia Code of Rules for Admission to the Practice of Law, W.Va. Code,* appx., vol. 1, provides:

Prior to admission to take the bar examination, the applicant shall satisfy the Board that he has completed a full course of study in a law school accredited by the American Bar Association and the Association of American Law Schools, that he has been granted and holds degrees of A.B. or B.S. and LL.B. or J.D.

or their equivalent or higher degrees from an accredited college or university and that he has been a resident of the State of West Virginia for more than thirty (30) days and is a citizen of the United States of America.

The petitioner also refers to the requirements set forth in *W.Va.Code,* 30–2–1 [1972] and 30–2–2 [1955]. *But see* Syl. pt. 1, *State ex rel. Askin v. Dostert,* 170 W.Va. 562, 295 S.E.2d 271 (1982).

constitutional right to pursue a livelihood, which is protected by the Privileges and Immunities Clauses contained in article IV, section 2, clause 1, of the United States Constitution, and section 1 of the Fourteenth Amendment to the United States Constitution.[2] This Court has before it the petition for review, all matters of record and briefs and argument of counsel.

There is no dispute between the parties as to the facts surrounding this case. Petitioner is a resident of St. Clairsville, Ohio, and a 1978 graduate of Vanderbilt University School of Law. She became licensed to practice law in the State of Ohio on May 7, 1979 and has since held various legal positions in that state. In November, 1981, petitioner began employment with a law firm in Wheeling, West Virginia, which is near St. Clairsville but across the Ohio River.

Desiring to become a member of the West Virginia State Bar, petitioner soon applied for admission, by examination to be given in February, 1982. The application contained a character questionnaire and various letters wherein petitioner admitted that she could not meet the thirty (30) day residency requirement because it would cause undue hardship on her family. She offered alternatives to respondent with the expectation of satisfying the underlying purposes of the residency requirement but was unsuccessful.

In a special meeting of the Board of Law Examiners, held December 4, 1981, petitioner's application and credentials were considered, and in a letter dated December

7, 1981, petitioner was informed that she would not be allowed to take the February, 1982 bar examination.[3]

Petitioner seeks review by this Court of the decision of the West Virginia Board of Law Examiners pursuant to Rule 3.060 of the *West Virginia Code of Rules for Admission to the Practice of Law* which states:

> A review by the West Virginia Supreme Court of Appeals of the decision of the Board of Law Examiners denying any application may be had by the applicant. Such review shall be only upon the record upon which the Board of Law Examiners acted and the decision of the Board of Law Examiners shall not be reversed except for an abuse of discretion.[4]

Petitioner argues that West Virginia's thirty (30) day residency requirement infringes upon her fundamental right to pursue her livelihood as an attorney at law which she asserts is protected by the Privileges and Immunities Clauses of the United States Constitution. She claims that to impose such a requirement on nonresident attorneys seeking admission by examination to the West Virginia State Bar is invidious discrimination which bears no substantial relationship to the State's legitimate interest in protecting its citizens from unqualified lawyers. Conversely, respondent contends that the right to practice law is not fundamental and that the residency requirement bears a close relationship to the State's goals.

---

2. Article IV, section 2, clause 1, provides as follows: "The Citizens of each State shall be entitled to all Privileges and Immunities of citizens in the several States." Section 1 of the Fourteenth Amendment provides: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States...."

3. The letter stated in pertinent part:

   After maturely considering your [petitioner's] application and credentials, with your letter of explanation addressed to Mr. Haines, the Board is of the opinion that you have not met the requirements for admission to the Bar Examination in accordance with the Rules of the West Virginia Supreme Court of

Appeals governing admission to the practice of law in this State.

4. Respondent initially contends that this Court may not reverse the decision of the Board of Law Examiners unless it is found that the members of the Board abused their discretion in rejecting petitioner's application to take the bar examination. Respondent cites no authority to support this assertion. It is well settled that this Court has the appellate jurisdiction to pass upon the constitutionality of a law in this State as set forth in article VIII, section 3 of the West Virginia Constitution, and the "authority to define, regulate and control the practice of law in West Virginia is vested in the Supreme Court of West Virginia." Syl. pt. 1, *State ex rel. Askin v. Dostert, supra*, n. 1.

In recent years, the Privileges and Immunities Clause contained in article IV, section 2, clause 1 of the United States Constitution has been applied to strike down residency requirements for the admission to the practice of law in various states. *See Piper v. Supreme Court of New Hampshire*, 539 F.Supp. 1064 (D.N.H.1982); *Stalland v. South Dakota Board of Bar Examiners*, 530 F.Supp. 155 (D.S.D.1982); *Strauss v. Alabama State Bar*, 520 F.Supp. 173 (N.D.Ala.1981); *Sheley v. Alaska Bar Association*, 620 P.2d 640 (Alaska 1980) and *Gordon v. Committee on Character and Fitness*, 48 N.Y.2d 266, 397 N.E.2d 1309, 422 N.Y.S.2d 641 (1979). In reaching this conclusion these courts primarily relied upon *Baldwin v. Fish and Game Commission of Montana*, 436 U.S. 371, 98 S.Ct. 1852, 56 L.Ed.2d 354 (1978) and *Hicklin v. Orbeck*, 437 U.S. 518, 98 S.Ct. 2482, 57 L.Ed.2d 397 (1978), which recently "revitalized" the Privileges and Immunities Clauses after years of dormancy.[5]

As the United States Supreme Court stated in *Baldwin*:

> Perhaps because of the imposition of the Fourteenth Amendment upon our constitutional consciousness and the extraordinary emphasis that the Amendment received, it is not surprising that the contours of Art. IV, § 2, Cl. 1, are not well developed, and that the relationship, if any, between the Privileges and Immunities Clause and the 'privileges or immunities' language of the Fourteenth Amendment is less than clear. We are, nevertheless, not without some pronouncements by this Court as to the Clause's significance and reach.

436 U.S. at 380, 98 S.Ct. at 1858.

In *Baldwin v. Fish and Game Commission of Montana, supra,* a scheme that imposed higher license fees for elk hunting on nonresidents than residents was challenged as contrary to the Privileges and Immunities Clause. In upholding the law, the Court held that "[e]quality in access to Montana elk is not basic to the maintenance or well-being of the Union." 436 U.S. at 388, 98 S.Ct. at 1862. It found that nonresidents are not "deprived of means of a livelihood by the system or of access to any part of the State to which they may seek to travel." *Id.* A recreational sport such as elk hunting is not an "essential activity or a basic right" protected by the Privileges and Immunities Clause. 436 U.S. at 387, 98 S.Ct. at 1862.

Quoting from *Paul v. Virginia*, 75 U.S. (8 Wall.) 168, 180, 19 L.Ed. 357 (1869), the Court in *Baldwin* stated:

> It was undoubtedly the object of the clause in question to place the citizens of each State upon the same footing with citizens of other States, so far as the advantages resulting from citizenship in those States are concerned. It relieves them from the disabilities of alienage in other States; it inhibits discriminating legislation against them by other States; it gives them the right of free ingress into other States, and egress from them; it insures to them in other States the same freedom possessed by the citizens of those States in the acquisition and enjoyment of property and in the pursuit of happiness; and it secures to them in other States the equal protection of their laws.

436 U.S. at 380, 98 S.Ct. at 1858.

It was recognized, though, that cases subsequent to *Paul v. Virginia, supra,* revealed that the effect of the clause is not all pervasive. As the Court stated in *Toomer v. Witsell*, 334 U.S. 385, 396, 68 S.Ct. 1156, 1162, 92 L.Ed. 1460, 1471 (1948):

> It does bar discrimination against citizens of other States where there is no substantial reason for the discrimination beyond the mere fact that they are citizens of other States. But it does not preclude disparity of treatment in the many situations where there are perfectly valid reasons for it. Thus, the inquiry

---

**5.** We note that petitioner relies upon the privileges and immunities language of article IV, section 2, clause 1 and section 1 of the Fourteenth Amendment to the United States Constitution. In the cases cited above no reference is made to section 1 of the Fourteenth Amendment.

in each case must be concerned with whether such reasons do exist and whether the degree of discrimination bears a close relation to them.

The purpose of the Privileges and Immunities Clause "is to outlaw classifications based on the fact of non-citizenship unless there is something to indicate that non-citizens constitute a peculiar source of the evil at which the statute is aimed." 334 U.S. at 398, 68 S.Ct. at 1867.

In *Hicklin v. Orbeck, supra,* an Alaskan statute known as the "Alaska Hire" law, was struck down as violative of the Privileges and Immunities Clause. Alaska Hire required preferential employment of residents over nonresidents by private companies involved in oil and gas leases, easements, right-of-way permits and other such contracts with the state. The statute was purportedly passed to combat Alaska's uniquely high unemployment rate.

The United States Supreme Court held that there was no evidence to indicate that nonresidents constituted "a peculiar source of the evil" and determined that Alaska's high unemployment rate was due more to large numbers of unskilled and untrained Alaskans and the "geographical remoteness" of many areas of the state. 437 U.S. at 526–27, 98 S.Ct. at 2487–88. Therefore, "Alaska Hire's discrimination against nonresidents cannot withstand scrutiny under the Privileges and Immunities Clause." 437 U.S. at 526, 98 S.Ct. at 2487.

Among the most persuasive of the recent cases invalidating residency requirements as violative of the Privileges and Immunities Clause of article IV, section 2, is the decision by the Supreme Court of Alaska in *Sheley v. Alaska Bar Association, supra,* striking down a thirty (30) day residency requirement prior to taking the bar examination which is identical to the one in question here. The court concluded that "[t]he thirty-day residency requirement ... clearly discriminates against nonresidents, because they are denied the opportunity to take the bar examination and, thus, precluded from practicing law." 620 P.2d at 643. It was held that the residency requirement was not closely related to insuring the academic and moral fitness of its lawyers and, therefore, without the protection contained in the Privileges and Immunities Clause of article IV, section 2. "We believe that the bar residency requirement is the sort of economic protectionism that the privileges and immunities clause of the United States Constitution was designed to prevent." 620 P.2d at 646. We agree with the reasoning in *Sheley* and hold that the residency requirement in Rule 1.000 of the *West Virginia Code of Rules for Admission to the Practice of Law* is a violation of the Privileges and Immunities Clauses contained in article IV, section 2, clause 1 of the United States Constitution and section 1 of the Fourteenth Amendment to the United States Constitution.

■ As this Court held in syllabus point 6 of *West Virginia State Bar v. Earley,* 144 W.Va. 504, 109 S.E.2d 420 (1959):

The justification for excluding from the practice of law persons who are not admitted to the bar and for limiting and restricting such practice to licensed members of the legal profession is not the protection of the members of the bar from competition or the creation of a monopoly for the members of the legal profession, but is instead the protection of the public from being advised and represented in legal matters by unqualified and undisciplined persons over whom the judicial department of the government could exercise slight or no control.

■ The United States Supreme Court has recognized that "[t]he interest of the States in regulating lawyers is especially great since lawyers are essential to the primary governmental function of administering justice, and have historically been 'officers of the courts.'" *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 792, 95 S.Ct. 2004, 2016, 44 L.Ed.2d 572, 588 (1975). Consequently, it must be shown by respondent that the residency requirement bears a substantial relationship to the State's interest in protecting the public from unscrupulous and unqualified attorneys at law.

Respondent fails to show that nonresident lawyers constitute a "peculiar source

of the evil" at which the residency requirement is aimed nor have they tendered any plausible argument to support the contention that the residency requirement bears a close relationship to the State's goal of a competent bar. Respondent sets forth numerous reasons why this Court should uphold the thirty (30) day residency requirement, none of which are persuasive. There are less intrusive methods of maintaining a competent bar other than requiring the residence of an applicant in this State for a period of time prior to taking the bar examination.

■ First, respondent asserts that nonresidents will not be subject to the discipline and control of the courts of West Virginia or amenable to service of process. In disposing of this contention, the court in *Stalland v. South Dakota Board of Bar Examiners*, 530 F.Supp. 155, 160 (D.S.D. 1982) stated:

> The State could require nonresident attorneys to maintain an office in South Dakota. The office could be staffed by someone authorized to act as an agent for service of process, or the State could require the nonresident to designate the Clerk of the State Supreme Court as his or her agent for service of process. The State may expand the requirement of association with local counsel to the practice in South Dakota by all nonresident members of the Bar. Various conditional licensing systems have been suggested by which the initial residence requirement would be waived and a permanent license granted only upon satisfaction of one or more alternatives to simple residency. (footnotes omitted).[6]

Respondent also maintains that unless applicants are required to reside in the State for the prescribed period of time, they will not become sufficiently acquainted with local law or the attitudes of the various judges within this State. First, the requirement that an applicant pass the bar examination should suffice to acquaint him or her with the local law. Second, respondent offers no evidence to show that familiarity with the attitudes of local judges bears any relationship to the ability to competently practice law in this State. Moreover, respondent's positions are inconsistent in that once an applicant has passed the bar examination there is no requirement that he or she remain a resident of the State, therefore, the alleged problem could not be cured by requiring applicants to reside here a mere thirty (30) days prior to taking the examination. *See, e.g., Stalland v. South Dakota Board of Bar Examiners, supra*, at 160.

■ Respondent further urges that the residency requirement for bar applicants would minimize the State's "administrative and investigative workloads." Again, respondent has offered no evidence that the "administrative and investigative" workload of the State is caused by nonresident attorneys who wish to become members of the West Virginia State Bar. Discrimination against nonresident attorneys cannot be justified by assertions of administrative inconvenience which are not related to the maintenance of a competent bar. *Stalland, supra*, at 159.

In addition, the nationwide investigatory service, the National Conference of Bar Examiners, is available to the states for the purpose of acquiring information about the character and fitness of nonresident bar applicants. *See, e.g., Strauss v. Alabama State Bar*, 520 F.Supp. 173 (N.D.Ala.1981); *Sheley v. Alaska Bar Association, supra*, at 645. The use of this service would be less restrictive than requiring an applicant to reside in West Virginia, especially in view of the fact that any useful information will most likely be acquired outside the State. Furthermore, it is recognized that the respondent has an interest in personally interviewing applicants to evaluate their character and fitness to become members of the bar but this can also be done in a manner less restrictive than residency. The applicant could be required to make

---

**6.** There are two types of residency requirements: simple and durational. Simple residency means residing at the time of admission. West Virginia's thirty (30) day residency requirement is durational but as the court noted in *Sheley, supra*, at 644–45 n. 26, both types are equally subject to scrutiny under the Privileges and Immunities Clause of article IV, section 2.

himself or herself available for an interview at a time convenient for the parties or even made to submit to an interview by an appointed "master" outside the State. *Sheley, supra,* at 645–46.

Finally, respondent cites the summary affirmance by the United States Supreme Court of *Wilson v. Wilson,* 416 F.Supp. 984 (D.Or.1976) *aff'd mem.,* 430 U.S. 925, 97 S.Ct. 1540, 51 L.Ed.2d 768 (1977) to support the argument that a residency requirement has withstood constitutional scrutiny at the highest level. In *Wilson,* the United States District Court upheld an Oregon residency requirement to practice law in that state. Respondent's reliance is misplaced in that the decision in *Wilson* was rendered before the 1978 "revitalization" of the Privileges and Immunities Clauses and, in any event, that clause, as it affects residency requirements, was not considered by the Court in reaching its decision. It is well settled that a summary affirmance is limited to the issues of the proceeding below making *Wilson* inconsequential in this case. *Mandel v. Bradley,* 432 U.S. 173, 176, 97 S.Ct. 2238, 2240, 53 L.Ed.2d 199, 204–05 (1977).

For the reasons set forth herein, this Court holds that requiring an applicant for admission to the West Virginia State Bar to be a resident of West Virginia more than thirty (30) days prior to taking the bar examination is discriminatory against non-residents in violation of the Privileges and Immunities Clauses contained in article IV, section 2, clause 1 of the United States Constitution and section 1 of the Fourteenth Amendment to the United States Constitution. We, therefore, reverse the decision of the West Virginia Board of Law Examiners in denying the application of Jennifer Smart Sargus to take the bar examination and hereby order respondent to allow petitioner, if otherwise qualified, to take any regularly scheduled bar examination as she may choose without becoming a West Virginia resident thirty (30) days prior thereto.

Relief granted.