386 S.E.2d 25

**STATE of West Virginia ex rel. H.K. PORTER COMPANY, INC.**

v.

**Honorable Sam WHITE, Judge of the Circuit Court of Pleasants County.**

**STATE of West Virginia ex rel. Steven F. WRIGHT**

v.

**Honorable Sam WHITE, Judge of the Circuit Court of Pleasants County.**

Nos. 19150, 19151.

Supreme Court of Appeals of West Virginia.

Oct. 19, 1989.

Steven F. Wright, James Bowie, Skelton, Taintor & Abbott, Auburn, Me. and Edgar A. Poe, Jr., Shuman, Annand & Poe, Charleston, for State ex rel., H.K. Porter Co., Inc.

Sam White, Judge, Circuit Court, St. Marys, pro se.

BROTHERTON, Chief Justice:

In this consolidated action the petitioners, H.K. Porter Company, Inc. and Steven F. Wright, invoke the original jurisdiction of this Court [1] and seek writs of prohibition and mandamus to reverse the ruling of the respondent, the Honorable Judge Sam White, which denied petitioner Wright's motion to appear *pro hac vice* before the Circuit Court of Pleasants County.

The issue presented for our resolution is whether, under Rule 8.0 of the West Virginia Rules for Admission to the Practice of Law, Steven F. Wright should be permitted to appear *pro hac vice* in the Circuit Court of Pleasants County, in association with West Virginia counsel, for the limited purpose of the trial and/or settlement of asbestos-related personal injury litigation.

The petitioners represent that H.K. Porter Company, Inc. has been a named defendant in approximately fifteen hundred (1,500) asbestos-related personal injury lawsuits throughout West Virginia, as well as sixty thousand (60,000) similar lawsuits throughout the United States. Since 1981, H.K. Porter Company, Inc. has been represented by the Auburn, Maine, law firm of Skelton, Taintor and Abbott. Steven F. Wright has served as Skelton, Taintor and Abbott's lead counsel in asbestos litigation since 1985, and, as a result, he has appeared in numerous state and federal jurisdictions in the United States.[2]

In October, 1988, Mr. Wright was retained to represent H.K. Porter Company, Inc. on a regional basis and he became responsible for case disposition in Maine, New Hampshire, Vermont, Massachusetts, Connecticut, Rhode Island, Puerto Rico, the Virgin Islands, and West Virginia. The

---

1. West Virginia Constitution, art. VIII, § 3 states, in part: "The supreme court of appeals shall have original jurisdiction of proceedings in habeas corpus, mandamus, prohibition and certiorari."

 West Virginia Code § 53–1–2 (1981) provides: Jurisdiction of writs of mandamus and prohibition (except cases where of cognizance has been taken by the supreme court of appeals or a judge thereof in vacation), shall be in the circuit court of the county in which the record or proceeding is to which the writ relates. A rule to show cause as hereinafter

provided for may be issued by a judge of a circuit court or of the supreme court of appeals in vacation. A writ peremptory may be awarded by a circuit court or a judge thereof in vacation, or by the supreme court of appeals in term.

2. The petitioners state that Mr. Wright is a member in good standing of all Maine courts, the United States District Court for the District of Maine, the United States Court of Appeals for the First Circuit, the United States Claims Court, and the United States Supreme Court.

petitioners state that H.K. Porter Company, Inc. "relies upon Attorney Wright as the attorney to whom it has given ultimate responsibility for settlement or trial of asbestos cases in West Virginia consistent with its national policies and procedures for defending such cases."

There are presently 114 asbestos-related personal injury actions pending before the respondent Judge White in the Circuit Court of Pleasants County. Of more immediate concern to the petitioner in this case, however, are ten (10) consolidated cases set for trial on October 23, 1989.

In a letter dated May 26, 1989, Mr. Edgar A. Poe, Jr., an attorney from the Charleston, West Virginia, law firm of Shuman, Annand & Poe, informed Judge White that, pursuant to the requirements of Rule 8.0(b)(3)[3] of the West Virginia Rules for Admission to the Practice of Law, he and another attorney from his office would serve as local counsel of record for Mr. Wright and the H.K. Porter Company, Inc. He stated further:

> The reason for the request by Mr. Wright for *Pro Hac Vice* admission for the trial of the cases is both practical and legal. The scope of Mr. Wright's participation to date in West Virginia has been limited to a few trial appearances. Further, the number of jurisdictions in which Mr. Wright appears for trial make it practically impossible for him to take the bar in every jurisdiction.

Judge White denied Mr. Wright's Application for Appearance *Pro Hac Vice* on June 21, 1989, but stated that "I hope you can get the Supreme Court to change the ruling, because I would appreciate having you before this Court to try these cases."

Judge White's denial of Mr. Wright's motion to be admitted *pro hac vice* was based upon his interpretation of that portion of Rule 8.0(d) of the West Virginia Rules for Admission to the Practice of Law which states that "if the applicant's appearances within the State of West Virginia within the past 24 months are *numerous or frequent* or involve improper conduct, the court or tribunal shall deny such person the continuing privilege of appearance." (Emphasis added.)

The respondent Judge White argues that this Court should not grant the petitioners' request for writs of prohibition and mandamus, asserting that Mr. Wright has not complied fully with the requirements of Rule 8.0 and arguing more strenuously that "certainly appearances in one thousand five hundred (1,500) separate and individual cases in 24 months would be considered both numerous and frequent."

The petitioner denies that his Application for Appearance *Pro Hac Vice* is incomplete and, indeed, the respondent Judge White said nothing to indicate that Mr. Wright had not complied with the procedures set forth in this rule when the motion was made on June 21, 1989.[4] In response to the argument that appearances in 1,500 cases in twenty-four months should be considered both numerous and frequent, the petitioner states that he has not appeared personally and as sole attorney in over 1,500 asbestos-related personal injury cases in West Virginia over the past twenty-four months. Rather, he contends his participation has been "characteristic of the standardized nature of this *national* litigation, and limited, except for the instances set forth in the

---

**3.** Rule 8.0(b) of the West Virginia Rules for Admission to the Practice of Law lists the application requirements for *pro hac vice* admission:

(b) *Application.* Before such privilege of appearance is granted, the applicant shall provide such judge, tribunal or body a verified statement of application for pro hac vice admission listing (1) the action, suit, proceeding or other matter which is the subject of the application; (2) the name, address and telephone number of the registration or disciplinary agency of all state courts, the District of Columbia or of the country in which such person is admitted; (3) the name and address

of the member of The West Virginia State Bar who will be a responsible local attorney in the matter; and (4) all matters before West Virginia tribunals or bodies in which such person is, or has been involved in the preceding 24 months.

**4.** We can find no other evidence in the record to support the respondent's assertion. In his petition to this Court, Mr. Wright included a list of his appearances at six trials in West Virginia from 1987 to 1989 on behalf of the H.K. Porter Company, Inc.

Petitions, to being a signatory with and resource for local counsel in their conduct of pretrial procedures."

The petitioner now suggests several grounds upon which this Court should find the "numerous or frequent" appearance provision of Rule 8.0(d) unconstitutional. We do not agree that this regulation is unconstitutional, as we recognize the State's legitimate interest in regulating both lawyers and various aspects of the practice of law.[5] However, we do believe that, given the circumstances, the intent behind this ground for the denial of a *pro hac vice* application was misinterpreted in this case, and, therefore, the petitioner's request for *pro hac vice* admission should have been granted.

In *Leis v. Flynt*, 439 U.S. 438, 441–42, 99 S.Ct. 698, 700, 58 L.Ed.2d 717, 721–22 (1979), the United States Supreme Court discussed *pro hac vice* admissions in the American courts:

> We do not question that the practice of courts in most states is to allow an out-of-state lawyer the privilege of appearing upon motion, especially when he is associated with a member of the local bar. In view of the high mobility of the bar, and also the trend toward specialization, perhaps this is a practice to be encouraged. But it is not a right granted either by statute or the Constitution.

Although the opportunity to appear in a state court *pro hac vice* is a privilege and not a right, a court should grant a request to appear *pro hac vice* "unless some legitimate state interest is thwarted by admission of the out-of-state attorney." *Enquire Printing & Publishing Co., Inc. v. O'Reilly*, 193 Conn. 370, 375, 477 A.2d 648 (1984); *Yale Literary Magazine v. Yale University*, 4 Conn.App. 592, 496 A.2d 201, 207 (1985).

> Where the Court is satisfied that the out-of-state attorney has sufficient training and expertise to represent his clients'

interests and is admitted and practicing law in good standing in another state ... the motion to admit *pro hac vice* will generally be granted.

*18 International Ltd. v. Interstate Express, Inc.*, 116 Misc.2d 66, 455 N.Y.S.2d 224, 226 (1982).

 "Article eight, section one *et seq.* of the West Virginia Constitution vests in the Supreme Court of Appeals the authority to define, regulate and control the practice of law in West Virginia." Syllabus point 1, *Lane v. W.Va. State Board of Law Examiners*, 170 W.Va. 583, 295 S.E.2d 670 (1982). In *W.Va. State Bar v. Earley*, 144 W.Va. 504, 109 S.E.2d 420, 435 (1959), at syllabus point 10, this Court recognized that "in the exercise of their inherent power the courts may supervise, regulate and control the practice of law by duly authorized attorneys and prevent the unauthorized practice of law by any person, agency or corporation." Discussing the interests which are protected by the licensing of attorneys, we stated that:

> The justification for excluding from the practice of law persons who are not admitted to the bar and for limiting and restricting such practice to licensed members of the legal profession is not the protection of the members of the bar from competition or the creation of a monopoly for the members of the legal profession, but is instead the protection of the public from being advised and represented in legal matters by unqualified and undisciplined persons over whom the judicial department of the government could exercise slight or no control.... The licensing of lawyers is not designed to give rise to a professional monopoly but instead to serve the public right to protection against unlearned and unskilled advice and service in relation to legal matters.

*Id.*, 144 W.Va. at 527–528, 109 S.E.2d at 435. These and other factors were con-

---

**5.** *See Sargus v. West Virginia Board of Law Examiners*, 170 W.Va. 453, 294 S.E.2d 440, 444 (1982), quoting from *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 792, 95 S.Ct. 2004, 2016, 44 L.Ed.2d 572, 588 (1975): "The United States Supreme Court has recognized that '[t]he inter-

est of the States in regulating lawyers is especially great since lawyers are essential to the primary governmental function of administering justice, and have historically been "officers of the courts." ' "

sidered by the Arkansas Supreme Court in *McKenzie v. Burris*, 255 Ark. 330, 500 S.W.2d 357 (1973), cited by the petitioner in support of his argument that an arbitrary numerical cut-off, such as the 114 cases now docketed in Pleasants County, should not trigger the denial of an Application for Appearance *Pro Hac Vice*.

In *McKenzie*, an out-of-state attorney was allowed to participate in the trial of a medical malpractice case in spite of the fact that he had been involved in the trial, preparation for trial, or settlement negotiations of many other cases in the state.[6] Although the defendants argued that the out-of-state attorney was, in effect, practicing law in the state without being licensed to do so, the court disagreed with this assessment in light of the attorney's experience in medical malpractice litigation:

> The state has legitimate interests to be weighed in considering pro hac vice admissions in order to maintain a high level of professional ethics, to assure a high quality of representation in the courts and to protect the economic interests of the regularly licensed resident attorneys of the state. In order to properly protect these interests and to expedite the administration of justice, the courts are concerned with the qualifications and conduct of counsel, their availability for service of papers and amenability to disciplinary proceedings. But these interests do not justify an arbitrary numerical limitation on the number of such appearances by an attorney in the state, where the nonresident attorney associated with resident counsel is not involved in a general practice of law, particularly where the nonresident practitioner has developed some degree of expertise in the particular field of litigation in which he is engaged.

*Id.* 500 S.W.2d at 366. As *McKenzie* illustrates, there are occasions when, because an out-of-state attorney has demonstrated considerable expertise in a specialized area

of the law, a court will admit that attorney *pro hac vice* for the limited purpose of engaging in that type of litigation.

Similarly, in *18 International Ltd. v. Interstate Express, Inc.*, 455 N.Y.S.2d at 226, the plaintiff moved for an out-of-state attorney's *pro hac vice* admission and established that the attorney was a member in good standing of the Illinois and New Jersey State Bars and that his area of specialization—the litigation of cargo claims—was the issue involved in the case at bar. The court concluded that the opposing party had failed to show that it would be prejudiced if the attorney were permitted to litigate the case in New York and stated that, furthermore, "the element of prejudice is totally unrelated to legal qualifications and the reasons for the enactments of the applicable statutes and Rules." *Id.* Having established his legal qualifications, expertise, and good standing, the plaintiff's motion to admit the out-of-state attorney *pro hac vice* was granted.

■ In the case now before us, neither Mr. Wright's qualifications to practice law nor his expertise in his field are challenged. Not only does Mr. Wright have a demonstrated expertise in handling asbestos-related personal injury litigation, but he is also thoroughly familiar with the affairs of the client whom he seeks to represent. Although inconvenience to the forum court and general docket control is an often-cited concern with the admission of out-of-state attorneys,[7] it appears as though the progression of these cases can only be enhanced by Mr. Wright's participation. The petitioners state that his involvement in the West Virginia litigation thus far has resulted in the disposition of over 600 cases. Mr. Wright's involvement in these cases gave him reason to anticipate that he would be admitted *pro hac vice* in Pleasants County, as he had been in other West Virginia counties, because he was involved in litigation of a highly specialized nature.

---

6. The facts indicate that the attorney was associate counsel in a personal injury case, a will contest and six medical malpractice actions and also consulted with state attorneys on two medical malpractice cases in which no lawsuit was filed. *See* Annotation, *Frequency of Appearance*

*of Out–of–State Attorney as Affecting Right to Admission for Particular Case,* 61 A.L.R.3d 264 (1975).

7. *See* Annotation, *Attorney's Right to Appear Pro Hac Vice in State Court,* 20 A.L.R.4th 855 (1983).

We realize that the petitioners do not overstate the complexities involved in asbestos litigation. It is both the complex nature of this litigation and Mr. Wright's expertise which we believe militate in favor of granting his application for *pro hac vice* admission. Significantly, it was the respondent Judge White who, upon initially denying Mr. Wright's motion, stated:

I want to say that I hope Mr. Wright gets to appear in these cases because, if he does, the better the counsel, the less chance of the Court committing error. I will welcome him to participate in the trial of the cases.... I hope the Supreme Court will disagree with me. It is their rule. They are going to be the ones that have to change it.

We decline the respondent's invitation to change our rule. None of the interests which Rule 8.0 seeks to protect are likely to be jeopardized by Mr. Wright's participation in the H.K. Porter defense in Pleasants County. Nevertheless, while we recognize that Rule 8.0 vests a trial judge with the discretion to grant or deny *pro hac vice* admissions if there is evidence of misconduct or other abuse of the process, we believe that, in this instance, Mr. Wright's motion should have been granted.

▪ An application for *pro hac vice* admission to practice law in West Virginia for a limited purpose should ordinarily be granted if the court is satisfied that the attorney seeking admission has complied fully with the requirements of Rule 8.0(b) of the West Virginia Rules for Admission to the Practice of Law. The "numerous or frequent" appearances provision contained in Rule 8.0(d) should not be interpreted to require the rejection of the *pro hac vice* application of an otherwise qualified attorney in cases in which the attorney is engaged in a highly specialized practice of the law and his involvement in litigation in this State is limited to that area of expertise. When there is no evidence that the attorney is trying to circumvent licensing procedures and conduct a generalized practice of the law in this State, and when the attorney has, in all other respects, complied fully with the requirements of Rule 8.0, the Application for Appearance *Pro Hac Vice* should ordinarily be granted.

▪ However, we emphasize that, like the practice of law, the *pro hac vice* admission of an out-of-state attorney not licensed to practice law in this State is a privilege, not a right. Trial court judges, in the conscientious exercise of their discretion, may refuse otherwise proper *pro hac vice* applications when there is evidence of misconduct or other procedural abuses by the attorney seeking admission.

Although we rule for the petitioner in this case, we cannot ignore Judge White's concern, voiced both in his petition and during oral argument, that there is a tendency towards non-compliance with the procedures set forth in Rule 8.0, and that this attitude has been fostered primarily by a lack of enforcement by circuit court judges. We would remind all parties that the mandatory language of Rule 8.0(c) requires that an out-of-state attorney admitted *pro hac vice* be associated with an active member in good standing of the West Virginia State Bar. The local attorney must attend all court proceedings "unless released from such responsibility by appropriate order and, even if released, shall continue to be a responsible attorney in the matter in all other respects."

To summarize our holding, we find that in this case the petitioner's request for *pro hac vice* admission before the Circuit Court of Pleasants County should have been granted. Central to this decision is the petitioner's compliance with the requirements of Rule 8.0 and our consideration of both the complexities of asbestos-related personal injury litigation and the petitioner's own expertise in the area. Furthermore, we note that no objections to the petitioner's appearances have been raised by opposing parties in the pending actions. Because we conclude that Steven F. Wright complied fully with Rule 8.0 and was entitled to admission *pro hac vice* in the Circuit Court of Pleasants County, we grant the writs of prohibition and mandamus sought by the petitioners in this action.

Writs granted.