# CHARLESTON.

BECK v. COX et als.

Submitted December 14, 1915. Decided December 17, 1915.

1. MUNICIPAL CORPORATIONS—*Ordinances* — *Streets* — *Regulation of Traffic.*

The power vested in the council of the City of Morgantown, by sec. 18 of ch. 144 of the Acts of 1901, and sec. 28, ch. 47, Code, ser. sec. 2409, to have its streets kept free from obstructions and to protect the persons and property of its inhabitants, confers authority to pass a traffic ordinance requiring vehicles of all kinds, in the use of the streets of the city, to confine themselves to the right hand sides of the centers thereof, with reference to the directions in which they are severally moving, and forbidding the leaving of any vehicle standing on a street elsewhere than on the right hand side thereof with reference to the direction in which it fronts. (p. 443).

2. SAME—*Powers—Regulation of Traffic—Operation of Statute.*

Chapter 43B of the Code, prescribing regulations of the use of highways in general, by motor vehicles, neither expressly nor impliedly repeals said charter provisions, nor abrogates the powers conferred by them, except to the extent of deprivation of power to dispense with the limitations imposed by said chapter. (p. 443).

3. STATUTES—*Repeal by Implication—Irreconcilable conflict.*

Repeals by implication do not occur except in two instances, a statute plainly intended as a substitute for all previous law pertaining to its subject matter, on the one hand, and irreconcilable

repugnancy, on the other. In the latter case, the new act is amendatory and repeals the old only to the extent of such repugnancy. (p. 447).

Petition by James Beck against James A. Cox, Mayor, and others, for writ of prohibition.

*Writ refused.*

*E. M. Everly,* for petitioner.

*Stewart & John,* for respondents.

POFFENBARGER, JUDGE:

Charged with having violated a traffic ordinance of the city of Morgantown, the plaintiff seeks a writ of prohibition to prevent further prosecution of the proceeding against him, on the ground of alleged invalidity of the ordinance.

The ordinance in question is a measure of regulation of the use of the streets of the city, the enforcement of which incidentally works exclusion of vehicles from one side of the street, namely, the left hand side, when going in any given direction, and requires any person leaving a vehicle standing on any street, to place it on the right hand side thereof, with reference to the direction in which it fronts. It does not deprive any citizen of the right to use any street, nor of the right to leave a vehicle standing in any street. It merely regulates these two rights. Its validity is questioned, not on the ground of lack of legislative power to impose such regulations, but on the ground of lack of authority in the city of Morgantown so to regulate the use of its streets, on account of alleged lack of legislative delegation thereof to the city.

That the right of a citizen to travel and transport his property upon a public highway, in the course of business or pursuit of pleasure, rests upon a very firm and solid basis founded upon social, economic and public considerations of the highest order, is obvious. The use of highways for such purposes is one of common right. *Ex parte Dickey,* 76 W. Va. 576, 85 S. E. 781, 782. But it is not beyond the power of legislative regulation. This is conceded. Chapter 43B of the Code, dealing very comprehensively and extensively with the subject of motor vehicles, is said to be a full, complete and

exclusive expression of the legislative will on that subject; and, it is argued, impliedly forbids further regulation or restriction of the right by municipal corporations, under such authority as may have been delegated to them by special charters and provisions of chapter 47 of the Code. For the purposes of that act, public highways are defined as including any highway, county road, state road, public street, avenue, alley, park, parkway, driveway, or public place in any city, village or town. "Closely built up," a phrase used in the chapter, is defined as including the territory of a city, or town contiguous to a public highway, which is at such point built up with structures; the territory of a city, village or town, contiguous to a public highway not devoted to business, where, for not less than a quarter of a mile, the dwelling houses on each highway average less than one hundred feet apart; and territory outside of a city or village contiguous to a public highway within a distance of one-half mile from the post office. It defines "local authorities" as including officers of counties, cities, villages or towns, as well as all boards, committees, and other public officials of such counties, cities, villages or towns. Section 7 authorizes local authorities, notwithstanding other provisions of certain sections of the act, to set aside, for a given time, specified public highways for speed tests or races, under proper restrictions. Section 10 authorizes local authorities, notwithstanding the provisions of other sections of the act, to make, enforce and maintain reasonable ordinances, rules or regulations concerning the speed at which motor vehicles may be operated in any public highway, parks or parkways within a city, town or village. Sections 18 and 19 authorize any police court judge, mayor or justice of the peace to assess fines and costs against persons violating any provision of the act.

In none of these references to municipal corporations and their authorities, nor elsewhere in the act, is there an express repeal of any statutory delegation of power to municipal corporation, respecting regulation of the uses of streets. Such power as may have been vested by especial charters of cities, towns and villages or chapter 47 of the code, are unrepealed by any express terms and still continue, unless repealed by mere implication. There is no express repealing clause in

the chapter. Moreover, it is wholly silent respecting the subject of corporate powers. Its manifest purpose was to establish rules and regulations respecting the use of motor vehicles upon highways in general; and, in as much as the principal highways of the state run through cities, towns and villages, it was necessary to the effectiveness of the act, as a measure of regulation, to include in its provisions such portions of the highways as are within the limits of municipal corporations.

The introduction of the automobile and motorcycle as new highway vehicles, and the enormous increase of travel on the highways, resulting therefrom, and the dangers incident to the use of these high speed vehicles, were the inducements to this legislation. To affectuate the general purpose, it was necessary to make the regulation uniform throughout the state, as far as was reasonably practicable; and, in the case of necessary special regulations, to provide some method by which the drivers of motor vehicles might be able readily and easily to ascertain what they are. The necessity of inclusion of municipal corporations, or rather so much of the highways as lie within their limits, constitutes the reason for such provisions of the act as relate to them. The extension of the regulations to streets and other municipal public ways seems clearly to have been incidental to a purpose much larger than that of regulation of traffic on them. In other words, they are not the primary or main subjects of the regulatory act. Moreover, it does not extend to all the uses of highways. The speed of horses and horse-drawn vehicles and signals to be given by riders and drivers of horses are subjects not dealt with at all in any general way. Such duties or limitations as are imposed upon them pertain only to their relations to motor vehicles, and are purely incidental.

The special and restricted nature of the act in the respects noted is utterly inconsistent with the claim of comprehensiveness, necessary to the invocation of the rules of interpretation and construction relied upon. Not dealing fully with the subject of common right in highways, it cannot be regarded as a full and complete manifestation of the legislative will respecting it. The law of the road for vehicles other than motor vehicles, as fixed and determined by the common law,

remains largely unaltered. Dealing primarily and only partially with public highways, consisting for the most part of country roads, it includes municipal highways, only for the purpose of establishing certain maximum rates of speed on them and other limitations, as well as on other highways, and placing them beyond the power of municipal dispensation, for the safety and protection of life, limb and property in general, not with reference to the exigencies or requirements peculiar to urban life and business.

Another fallacy of the argument is the implied, if not express, assumption of the grant of certain rights in highways to the drivers of motor vehicles, which, if made, would impliedly negative the existence of municipal power to curtail, restrict, regulate or abate them. It is an act of limitations, not one of grants. It proceeds upon the theory of rightful use of the highways by motor vehicles, as new agencies or instrumentalities of travel and transportation, whose owners and operators have the same right as other citizens using other agencies or means, to the same ends or purposes, and then regulates that right by limitations and restrictions thereof. Not a word in it suggests, by inference or otherwise, abrogation or repeal of any power municipal corporations may have by virtue of the common law or any statute, to impose such further limitations as may arise *ex necessitate,* out of the exigencies and requirements of urban life and activity.

Under the charter of the city of Morgantown, the council is expressly authorized "to protect the persons of the inhabitants of the city," and "to preserve and promote the health, safety, comfort and well being of the inhabitants thereof," and, as to the streets, "to improve and light the same and to have them kept free (from obstruction) on and over them." Acts, 1901, ch. 144; sec. 18. Under sec. 28, ch. 47, Code, ser. sec. 2409, it has the same specific grant of power as to the streets and also power "to protect the persons and property of the citizens * * * and preserve peace and good order" in the city. The projection of high speed automatic vehicles into the streets of cities and towns, among horses, wagons, carts, carriages and pedestrians, and an enormous increase of the use of the highways, particularly of the paved

streets, for purposes of pleasure, without further regulations than those prescribed for highways in general, is an obvious source of danger to the persons and property of citizens, falling within the express terms of the power delegated to municipal corporations and not withdrawn by any express terms of the act in question, nor abrogated by implication arising from its terms or general scope and purpose. Municipal power expressly conferred, to keep the streets free from obstruction, amply covers the subject of standing vehicles. It would be absurd and ridiculous to say there is not power under the statute to prevent a citizen from leaving his vehicle standing across the middle of a street, or a number of citizens from completely stopping travel on a street by massing their vehicles over its entire width. These illustrations prove right of regulation of the use of vehicles for preservation of freedom of the streets from obstruction. That power extends to anything that obstructs, whatever its form or nature may be. It may be the position of a standing vehicle, or the method of directing and operating a moving vehicle, or the number and speed of vehicles moving without other regulations than those prescribed by the general law. The obvious and incontrovertible power of regulation as to standing vehicles necessarily extends to all other forms of obstruction, for the grant of power to prevent obstruction is general and without express terms of limitation. It is measured only by reason and fairness in the exercise thereof, and, within these limits the mode and extent of regulation are subjects of councilmanic opinion, judgment and discretion.

There is no implied repeal of these provisions, except in so far as they are limited by the general statute. Repeals by implication are not favored. Except in the case of a statute plainly intended as a substitute for all previous law pertaining to the subject matter thereof, implied repeals of pre-existent laws extend only so far as the old and new are irreconcilably repugnant. Between the general statute and the power conferred by the charter provisions to regulate the use of streets, by ordinaces not dispensing with the limitations imposed by the statute, there is no repugnancy at all.

The ordinance is clearly valid and the writ prayed for will be refused.                              *Writ refused.*