RALPH N. BROWN

*v.*

CIVIL SERVICE COMMISSION OF WEST VIRGINIA, *et al.*

(No. 13112)

Submitted January 19, 1972.    Decided February 29, 1972.

*John P. Anderson,* for appellant.

*Chauncey H. Browning, Jr.,* Attorney General, *Victor A. Barone,* Assistant Attorney General, for appellees.

HAYMOND, JUDGE:

This is an appeal granted June 29, 1971, upon the application of the petitioner, Ralph N. Brown, from the decision and final order of the Civil Service Commission of West Virginia rendered February 22, 1971, which upheld

the dismissal of the petitioner as an employee of the West Virginia Department of Natural Resources on May 4, 1970, effective May 18, 1970, from his position as Investigator I in the Planning and Development Division of the department.

After having obtained leave of this Court so to do, the petitioner moved this Court to reverse the order of the commission and on January 6, 1972, the defendant Civil Service Commission of West Virginia moved this Court to dismiss this appeal as improvidently awarded.

On January 19, 1972, this proceeding was submitted for decision upon the motion of the petitioner to reverse the order of the commission, upon the motion of the commission to dismiss this appeal as improvidently awarded, upon the record, including the transcript and the exhibits, and upon the written briefs and the oral arguments of the attorneys for the respective parties.

The threshold procedural question to be determined is whether this appeal which is based on Section 13, Article 6, Chapter 29, Code, 1931, as amended, the Civil Service Act, instead of Section 4, Article 5, Chapter 29A, Code, 1931, as amended, the Administrative Procedures Act, should be dismissed as improvidently awarded.

In 1961, the Legislature enacted the present Civil Service Act set forth in Chapter 29, Article 6, Code, 1931, as amended, which in Section 13, with respect to an employee in the classified service who is dismissed or demoted after completing his probationary period of service, or who is suspended thirty days in any one year, and concerning a review of the matter by the Civil Service Commission, provides that "Any final action or decision taken or made hereunder shall be subject to review by the supreme court of appeals, if appeal is made within sixty days of the action or decision complained of." Subsequently, in 1964 the Legislature enacted an Administrative Procedures Act which is set forth in Chapter 29A which applies to the Civil Service Commission as an

agency which is not expressly excluded from the operation of the statute. Section 4, Article 5, of that chapter, with respect to any party adversely affected by a final order or decision of the agency in a contested case, provides in Paragraph (b) that "Proceedings for review shall be instituted by filing a petition, at the election of the petitioner, in either the circuit court of Kanawha county, West Virginia, or with the judge thereof in vacation, or in the circuit court of the county in which the petitioner or any one of the petitioners resides or does business, or with the judge thereof in vacation, within thirty days after the date upon which such party received notice of the final order or decision of the agency." The same section, in Paragraph (a) also provides that "nothing in this chapter shall be deemed to prevent other means of review, redress or relief provided by law." Section 3, Article 7, of Chapter 29A provides that "All acts or parts of acts which are inconsistent with the provisions of this chapter are hereby repealed to the extent of such inconsistency, but such repeal shall not affect pending proceedings."

It is the contention of the commission that the foregoing provisions of Chapter 29A effect a repeal of the provision of Section 13, Article 6, Chapter 29, which authorizes an appeal to this Court from the final action or decision of the commission. There is no merit in this contention. In *State ex rel. Thompson* v. *Morton*, 140 W.Va. 207, 84 S.E.2d 791, the opinion contains this pertinent language: "A statute general in its terms and without negative words will not be construed to repeal by implication the particular provisions of a former statute which are special in their application to a particular case or class of cases, unless the repugnancy is so glaring and irreconcilable as to indicate the legislative intent to repeal." In *Harbert* v. *The County Court of Harrison County*, 129 W.Va. 54, 39 S.E.2d 177, this Court said: "Repeal of a statute by implication is not favored in law; and a general statute should not be construed to repeal a special law unless it does so by express words, or unless the words which it employs manifest a plain intention to repeal."

In *Roderick* v. *Hough,* 146 W.Va. 741, 124 S.E.2d 703, the opinion contains this language: "It is well settled that repeal of a statute by implication is not favored in law. *State ex rel. City of Wheeling v. Renick,* 145 W.Va. 640, 116 S.E.2d 763; *Harbert v. The County Court of Harrison County,* 129 W.Va. 54, 39 S.E.2d 177. Statutes are not considered to be repealed by implication unless the repugnancy between the new provisions and a former statute be plain and unavoidable, and a construction which repeals former statutes or laws by implication, and divests long approved remedies, is not favored by the courts. *Harbert v. The County Court of Harrison County,* 129 W.Va. 54, 39 S.E.2d 177; *United States Coal and Coke Company v. Turk,* 127 W.Va. 368, 33 S.E.2d 463; *Belknap v. Shock,* 125 W.Va. 385, 24 S.E.2d 457; *Forqueran v. Donnally,* 7 W.Va. 114. To repeal a statute by implication there must be such positive repugnancy between the provisions of the new and the old that they can not stand together or be consistently reconciled. *Harbert v. The County Court of Harrison County,* 129 W.Va. 54, 39 S.E.2d 177; *Clemans, Sheriff, v. Board of Education,* 68 W.Va. 298, 69 S.E. 808; *State v. Enoch,* 26 W.Va. 253."

There is no repugnancy or irreconcilable conflict between the provisions of the two statutes relating to an appeal from the final order or decision of the Civil Service Commission and the quoted provisions of Paragraph (a) of Section 4 of Article 5 that nothing in the chapter shall be deemed to prevent another means of review indicate clearly that the Legislature, by the enactment of Chapter 29A, did not intend to repeal the appellate provision of Section 13, Article 6, Chapter 29, Code, 1931, as amended.

In the *Harbert* case this Court held in Point 6 of the syllabus that "A general statute, which does not use express terms or employ words which manifest a plain intention so to do, will not repeal a former statute dealing with a particular subject, and the two statutes will operate together unless the conflict between them is so real and irreconcilable as to indicate a clear legislative purpose to repeal the former statute." Furthermore, this Court, in

*Zigmond* v. *Civil Service Commission,* 155 W.Va. 641, 186 S.E.2d 696, decided at this term of Court, in denying a similar motion upon the same grounds to dismiss an appeal to this Court from a final order of the Civil Service Commission, used this pertinent language: "There being no express language in the Administrative Procedures Act that repeals the appeal procedure in the Civil Service Commission Act, and inasmuch as the sections are not irreconcilable or repugnant and can be employed as two different methods of review of decisions of the Civil Service Commission, the appeal section of the Civil Service Commission Act is therefore not repealed by implication by the provisions of the Administrative Procedures Act." For the foregoing reasons and upon the authority of the cited cases, the motion to dismiss this appeal as improvidently awarded is denied.

The petitioner was employed by the West Virginia Department of Natural Resources on February 16, 1966, as a Project Coordinator. He was granted a Civil Service professional appointment as a Field Representative on July 1, 1967, and became a permanent employee on April 9, 1968. He worked with the Division of Administration from July 1, 1967 until some time in December, 1968, as a Field Representative in the Division of Administration and was then transferred to the Division of Planning and Development as an Investigator I and in that capacity he was under the immediate supervision of George Wise and was responsible to J. D. Brackenrich, Chief of the Planning and Development Division. He worked in property assignments for the department and in inventory matters for the Division of Administration and engaged in safety inspections. Subsequently he was given the title of Field Representative for the department and acted as Captain for a section of the Elk River Cleanup Program which was sponsored by the department. He performed right of way research and property research for the department and worked on approximately nineteen different projects known as River Access for Fishermen and Boatmen and Pleasure Seekers in the northern part of West

Virginia and performed other title search and investigative work on those properties. He also worked in the Coopers Rock area representing J. D. Brackenrich with the State Road Commission on a highway to be constructed through the Coopers Rock State Park and was working on this project at the time he was dismissed from his employment.

On May 5, 1970, the petitioner received a telephone call from J. D. Brackenrich, Chief of the Planning and Development Division, who told the petitioner that he would receive a letter on that day or on the following day which would inform him that he was being released from employment with the department and that he wanted to be sure to contact the petitioner before he received the letter. The letter dated May 4, 1970, bearing the initials "J. D." above the typewritten name of J. D. Brackenrich, Chief, Planning and Development, stated that due to the reduction in the work load assigned to the position class of the petitioner it had become necessary to release him from employment with the department and that in accordance with the provisions of Article XI, Section 4, Civil Service Rules and Regulations, his last working day would be May 18, 1970 at 5:00 o'clock p.m. The letter also stated that the writer would be pleased to provide references to any prospective employers and should the situation change the petitioner would be given every possible consideration for re-employment.

On May 19, 1970, the petitioner and Brackenrich and Charles W. Lewis, Executive Director of the Department of Natural Resources, met by appointment at a place called Mt. Storm, in Grant County, for the purpose of going together from that place to Charleston, but after some discussion the petitioner was advised that there was no need for him to go to Charleston and Brackenrich and Lewis took the state car from the petitioner and proceeded with it to Charleston, and the petitioner went to his home in another state car.

The petitioner appealed his dismissal to the Civil Service Commission and challenged the validity of his dismissal on numerous grounds. Hearings were had before the commission and testimony was taken on November 19, 1970 and on February 16, 1971. By its decision rendered February 22, 1971, the Civil Service Commission upheld the dismissal of the petitioner and directed that he should be placed on a re-employment list in accordance with the Rules and Regulations of the Civil Service System. The commission found that the petitioner held a civil service status at the time of his dismissal, that the letter dated May 4, 1970 informing the petitioner of his dismissal was a proper dismissal, that the formula for reduction in force, Article XI, Section 4 of the Rules and Regulations of the commission was properly applied, that the petitioner was the holder of the lower service rating within his classification of the Division of Planning and Development of the department, that the balance of the account from which the salary of the petitioner was payable was only $54.00, that political activities in Preston County concerning the dismissal of the petitioner had not been shown to have influenced his dismissal by anyone with authority to dismiss him, and that the person employed subsequently to the dismissal of the petitioner was employed in a capacity which was noncompetitive with that of the petitioner.

The petitioner assigns for reversal of the order of the commission, these alleged errors: (1) The dismissal was not made by the proper appointing authority of the department; (2) the dismissal was invalid for noncompliance with the provisions of Paragraph 10, Section 8, Article 6, Chapter 29, Code, 1931, as amended, the provisions of Article XI, Section 4 of the Rules and Regulations of the West Virginia Civil Service System and the reduction in force formula provided by Appendix C of such Rules and Regulations; (3) the dismissal was due to the political affiliation of the petitioner and resulted from the political influence of other persons; and (4) the petitioner was

prejudiced by the failure of the Director of the Department of Natural Resources to appear and testify as a witness although served with subpoena requiring his appearance as a witness.

This proceeding relates to a layoff and does not deal with a dismissal for cause. For that reason statutory provisions relating to a dismissal for cause are not applicable to this proceeding.

By Chapter 20, Article 1, Code, 1931, as amended, the Department of Natural Resources, the office of Director of the Department, and a Natural Resources Commission were created and established. Section 4 of the statute provides that the director shall be the chief executive officer of the department and shall organize the department into such offices, divisions, agencies and other units of activity as he may find necessary and desirable for the orderly, efficient and economical administration of the department for the accomplishment of its objects and purposes. Section 7 of the statute provides that in addition to all other powers, duties and responsibilities granted and assigned to the director he is authorized and empowered, among numerous activities, to delegate the powers and duties of his office, except the power to execute contracts, to appointees and employees of the department who shall act under his direction and supervision and for whose acts he shall be responsible, and to promulgate rules and regulations, in accordance with the provisions of Chapter 29A of the Code to implement and make effective the powers and duties vested in him by the provisions of Chapter 20 and to take such other steps as may be necessary in his discretion for the proper and effective enforcement of the provisions of that chapter.

Under the foregoing statute, the department, acting by its director, is the appointing authority and as such is authorized to employ and to dismiss and lay off employees of the department. Though the evidence shows that no writing had been issued by the department, acting by the

director, authorizing the Chief of the Planning and Development Division of the department to dismiss or lay off any of its employees, before the petitioner was laid off by Brackenrich, the chief of that division, it clearly appears that the petitioner was laid off by Brackenrich at the direction and by authority of the director after the director and Brackenrich had discussed the situation within the division relating to the action to be taken with respect to the petitioner. To effectuate the layoff no written authority was necessary or required. The verbal directive given the chief of the division by the director and the letter of the chief of the division advising the petitioner of his layoff were fully authorized and resulted in an effective layoff of the petitioner from his employment in the Planning and Development Division of the department. Under Section 4, Article XI, of the Rules and Regulations promulgated by the Civil Service Commission, the appointing authority may release any employee without prejudice, because of lack of funds or curtailment of work, and under Paragraph 5 of Appendix C of the Rules and Regulations of the Civil Service System, the separation formula shall be applied on a divisional basis for all positions.

It appears from the evidence that funds for continuing the project on which the petitioner was working had been exhausted and that no other work was available for the petitioner who was informed by the letter advising him of his layoff that his layoff was due to reduction in the work load assigned to his position class. Brackenrich testified that the only work available for the petitioner was a position as a rodman at the lower salary of $350.00 per month in lieu of the salary of the petitioner of $600.00 per month and that he offered the petitioner employment as a rodman but that the petitioner rejected the offer. The petitioner denied that he was offered and refused such employment but on the contrary stated that he would have accepted that position as an alternative. At any rate, the petitioner was not employed in that or in any other position in the department. The evidence also shows

and the Civil Service Commission found that the layoff of the petitioner was made in accordance with the reduction in force formula provided by the Rules and Regulations of the Civil Service System.

The evidence bearing upon political influence in connection with the layoff of the petitioner is speculative and indicates nothing more than suspicious circumstances with respect to the termination of the employment of the petitioner with the department. There is evidence that the chairman of the Preston County Republican Executive Committee and the prosecuting attorney of that county, who were influential members of the Republican party, discussed the political situation with reference to the petitioner and on occasions expressed the opinion that he should be dismissed from his position for political reasons and that other prominent Republicans also discussed the subject. The petitioner testified that he was told upon good authority that he could expect to be released for political reasons. His son testified that he was fearful that his father would lose his job because of politics; that he was told by friends that the Republican county chairman and the prosecuting attorney "were after" his father and had discussed the subject with friends who reported their action to him; that he had mentioned the subject to the director of the department who told him that on the morning of May 5, 1970 he had received a telephone call from Kingwood about his father but he did not identify the person who made the call; and that in connection with a local school controversy the prosecuting attorney had told him that his future and his father's future would be better off if they got out of the controversy and switched sides. The chairman and the prosecuting attorney, who were called as witnesses by the petitioner, admitted that they discussed the political situation with respect to the petitioner but they stated that they felt that he could not be dismissed for political reasons because of his civil service status, and each of them denied that he exerted any political influence with anyone who possessed the authority to release or lay off the petitioner

from his employment with the department. In short, the evidence fails to show that the layoff of the petitioner was due to or resulted from political influence exerted by any person upon anyone having authority to release or lay off the petitioner.

Upon the evidence the commission found that political activity generated in Preston County concerning the dismissal of the petitioner had not been shown to have influenced his dismissal by those with authority to dismiss him. This Court has held that a final order of the Civil Service Commission based upon a finding of fact will not be reversed by this Court upon appeal unless it is clearly wrong. Syllabus, *Billings* v. *Civil Service Commission,* 154 W.Va. 688, 178 S.E.2d 801. It does not appear that the foregoing finding of the commission is clearly wrong. The findings of the commission with respect to the application of the reduction in force formula and the political activity of political leaders in Preston County, not being clearly wrong, will not be disturbed by this Court on this appeal.

There is no merit in the contention of the petitioner that the failure of the director of the department to testify, though served with a subpoena to appear as a witness, constituted reversible error. The director was not available for the first day of the hearing before the commission on November 19, 1970 and was ill when the final hearing was had on February 16, 1971. Counsel for the petitioner on each occasion informed the commission that he desired the testimony of the director but counsel did not request any continuance for that purpose but submitted the case without such testimony and expressed his satisfaction for the manner in which the hearing had been conducted by the commission. By omitting to request a continuance and by permitting the conclusion of the hearing without objection to the absence of testimony of the director, the right of the petitioner to obtain and offer such testimony was waived and he can not now complain of the absence of such testimony. See Point 3, syllabus, *Campbell* v. *Lynch,* 88 W.Va. 209, 106 S.E. 869; *Cross* v. *Cross,* 56 W.Va. 185, 49 S.E. 129. Furthermore, the nature of the testimony

to be given by the director or the benefit to the petitioner to be derived from such testimony is not disclosed by the record.

The motion to reverse is denied and the final order of the Civil Service Commission entered February 22, 1971, confirming the layoff of the petitioner and directing that the petitioner be placed on a re-employment list in accordance with the Rules and Regulations of the Civil Service System, is affirmed.

> *Motion to reverse denied;*
> *Order of the Civil Service*
> *Commission affirmed.*