332 S.E.2d 826

**Richard L. TRUMKA, Cecil Roberts and John Banovic, et al.**

v.

**CLERK OF the CIRCUIT COURT OF MINGO COUNTY, Sprouse Creek Processing Co.**

No. 16659.

Supreme Court of Appeals of
West Virginia.

Submitted April 23, 1985.

Decided June 3, 1985.

Concurring Opinion July 11, 1985.

James M. Haviland & Gary A. Collins, McIntyre, Haviland & Jordan, Charleston, Bradley J. Pyles, Crandall, Pyles & Crandall, Logan, Michael Holland, Gen. Counsel, Washington, D.C., for petitioners.

Forrest H. Roles, Smith, Heenan & Althen, Charleston, Ronald E. Meisburg & William D. Florman, Smith, Heenan & Althen, Washington, D.C., Howard M. Persinger, Jr., Williamson, for respondents.

Southeastern Investigation & Security, Inc., R. Joseph Zak, Charleston, amicus curia.

MILLER, Justice:

This case arises out of a labor dispute between members of the United Mine Workers of America (UMWA)[1] and two coal companies, the Sprouse Creek Processing Company and the Rocky Hollow Coal Company. These coal companies filed an action below seeking to enjoin the striking UMWA members from picketing and doing other activities near their places of business. The UMWA counterclaimed that the coal companies were violating W.Va.Code, 61–6–11,[2] by hiring nonresident security guards from Southeastern Investigation and Security, Inc. Southeastern is a nonresident corporation licensed by the West Virginia Secretary of State to furnish security guards, pursuant to W.Va.Code, 30–18–1 through –8, which regulates the licensing of resident and nonresident private detectives, investigators, and guards.

The Circuit Court of Mingo County held that W.Va.Code, 61–6–11, had been implicitly repealed by W.Va.Code, 30–18–1 through –8, and therefore refused to grant an injunction to the UMWA. On appeal, we have before us only the briefs filed by the parties and no record because we are presented with the narrow legal issue of whether by passing W.Va.Code, 30–18–1

through –8, the legislature intended to implicitly repeal W.Va.Code, 61–6–11. We conclude that the legislature exhibited no such intention and reverse the decision of the circuit court.

█ It is well established in this jurisdiction that:

"Repeal of a statute by implication is not favored in law." Syllabus Point 1, *State ex rel. City of Wheeling v. Renick*, 145 W.Va. 640, 116 S.E.2d 763 (1960).

*See also Woodring v. Whyte*, 161 W.Va. 262, 242 S.E.2d 238 (1978); *Brown v. Civil Service Comm'n*, 155 W.Va. 657, 186 S.E.2d 840 (1972); *Zigmond v. Civil Service Comm'n*, 155 W.Va. 641, 186 S.E.2d 696 (1972); *Smith v. Siders*, 155 W.Va. 193, 183 S.E.2d 433 (1971); Syllabus Point 6, *State ex rel. Warder v. Gainer*, 153 W.Va. 35, 167 S.E.2d 290 (1969); *Roderick v. Hough*, 146 W.Va. 741, 124 S.E.2d 703 (1961); *State ex rel. Graney v. Sims*, 144 W.Va. 72, 105 S.E.2d 886 (1958); *State ex rel. Thompson v. Morton*, 140 W.Va. 207, 84 S.E.2d 791 (1954); Syllabus Point 5, *Harbert v. County Court*, 129 W.Va. 54, 39 S.E.2d 177 (1946); *United States Coal & Coke Co. v. Turk*, 127 W.Va. 368, 33 S.E.2d 463 (1944); *Belknap v. Shock*, 125 W.Va. 385, 24 S.E.2d 457 (1943); *Vinson v. County Court*, 94 W.Va. 591, 119 S.E. 808 (1923); *State v. Snyder*, 89 W.Va. 96, 108 S.E. 588 (1921); *Beck v. Cox*, 77 W.Va. 442, 87 S.E. 492 (1915); Syllabus Point 1, *Kimball v. Loughney*, 70 W.Va. 765, 74 S.E. 953 (1912); *Clemans v. Board of Education*, 68 W.Va. 298, 69 S.E. 808 (1910).

█ In resolving the question of whether one statute has by implication repealed another statute, we have applied the following rule, stated in Syllabus Point 1 of

---

**1.** The appellants in this case are officers of the UMWA's International Union, District 17, and Local Unions 2248, 4942, 1440, and 1803. For convenience, we will refer to the appellants as simply the UMWA.

**2.** The parties agree that there is no direct legislative history for this statute, but from a historical standpoint, it seems clear that the statute was enacted to prohibit the practice utilized by

some coal companies of bringing in nonresident guards or private detectives when labor unrest occurred. These individuals sometimes assumed the role of law enforcement officers and were often accused of provoking needless confrontations with the local workers. H. Lee, Bloodletting in Appalachia 11 (1969); A. Suffern, Conciliation and Arbitration in the Coal Industry of America 75, 96–107 (1915).

*Brown v. Civil Service Comm'n,* 155 W.Va. 657, 186 S.E.2d 840 (1972):

" 'A general statute, which does not use express terms or employ words which manifest a plain intention so to do, will not repeal a former statute dealing with a particular subject, and the two statutes will operate together unless the conflict between them is so real and irreconcilable as to indicate a clear legislative purpose to repeal the former statute.' Point 6, syllabus, *Harbert v. The County Court of Harrison County,* 129 W.Va. 54 [39 S.E.2d 177 (1946) ]."

*See also Woodring v. Whyte,* 161 W.Va. at 268–69, 242 S.E.2d at 242; Syllabus Point 1, *Zigmond v. Civil Service Comm'n, supra; Smith v. Siders,* 155 W.Va. at 200–01, 183 S.E.2d at 437; *Roderick v. Hough,* 146 W.Va. at 745, 124 S.E.2d at 706; Syllabus Point 2, *State ex rel. City of Wheeling v. Renick, supra;* 1A Sutherland Statutory Construction § 23.09 (4th ed. 1972).

The legislature did not expressly state in W.Va.Code, 30–18–1 through –8, that one of its purposes for providing a licensing procedure for resident and nonresident private detectives, investigators, and guards was to repeal W.Va.Code, 61–6–11. Therefore, we must examine the statutes in question to determine if they are irreconcilably in conflict, which would indicate implicitly an intent on the part of the legislature to repeal W.Va.Code, 61–6–11.

W.Va.Code, 61–6–11, was first enacted in 1893 and was amended in 1923.[3] It is apparent that this Code section is basically a criminal statute designed to preclude out-of-state residents from being employed in this State to "perform any police duty of any sort therein, or in any way to aid or assist in the execution of the laws of this State."

Penalties are provided for the violation of the statute ranging from a fine of not less than five hundred nor more than five thousand dollars and imprisonment may be imposed not to exceed twelve months. Violators of the statute are deemed to be rioters, who may all be charged with murder if any person is killed while the rioters are engaged in prohibited activity.

When we turn to W.Va.Code, 30–18–1 through –8, enacted in 1959, we see that it is contained in our licensing chapter and the original title to the enactment, 1959 W.Va. Acts ch. 130, states: "AN ACT to amend chapter thirty of the code of West Virginia, one thousand nine hundred thirty-one, as amended, by adding thereto a new article, designated article eighteen, relating to licensing of private detectives and inves-

---

**3.** The amendment in 1923 changed the Code references in the last paragraph of the statute to reflect the references in the 1923 Code. The full text of W.Va.Code, 61–6–11, reads as follows:

"It shall be unlawful for any officer in this State to knowingly engage or employ any person not a bona fide resident of West Virginia, at the time of such employment, to do or perform any police duty of any sort therein, or in any way to aid or assist in the execution of the laws of this State.

"It shall be unlawful for any corporation, company, firm or person, under any circumstances, to knowingly engage or employ any person not a bona fide resident of this State, at the time of such employment, to do or perform police duty of any sort therein, or in any way to aid or assist in the execution of the laws of this State.

"It shall be unlawful for any person, not a bona fide resident of this State, as aforesaid, to do or perform, or to attempt to do or perform, any sort of police duty in this State, or, in any way, to aid or assist, or attempt to aid or assist, in the execution of the laws thereof. Any officer, corporation, company, firm or person, violating any of the provisions of this or either of the two preceding paragraphs shall be guilty of a misdemeanor, and, upon conviction thereof, shall be fined not less than five hundred nor more than five thousand dollars, and may, at the discretion of the court, be imprisoned in the county jail in the county in which the offense is committed not exceeding twelve months.

"All persons violating any of the provisions of the third paragraph of this section shall be taken and deemed to be rioters and shall be proceeded against in all respects as such, as provided for in sections one, two, three, four, five and six [§§ 61–6–1 to 61–6–6] of this article. If any person be killed by one or more rioters engaged with him at the time of such riot, such rioter or rioters shall be guilty of murder and punished as provided by law in other cases of murder: Provided, that nothing in this section shall be so construed as to interfere with the right and duty of the governor to call upon the President of the United States for aid in the enforcement of the laws, in cases provided for in the Constitution."

tigators and prescribing penalties in connection therewith." The regulatory and licensing nature of this statute are apparent from its contents. W.Va.Code, 30–18–1, sets out the license requirements for persons, firms, and corporations engaging in the "business of private detective or investigator or the business of watch, guard or patrol agency." [4]

W.Va.Code, 30–18–2, explains what information must be disclosed in the license application. License fees and bonding requirements are contained in W.Va.Code, 30–18–3, which states, in part, that an "applicant for a license hereunder shall pay to the secretary [of state] a license fee of fifty dollars, if the applicant be an individual, or one hundred dollars, if the applicant be a firm, partnership or corporation, or five hundred dollars, *if a nonresident of West Virginia or a foreign corporation.*" (Emphasis added). The coal companies in this case contend that it is this latter provision that creates the statutory conflict.[5] Undoubtedly, this licensing statute allows nonresidents to be licensed to work as guards or watchmen to protect persons or property. However, the fact that our licensing statute permits nonresidents to obtain a license to perform private detective, investigation or guard services in this State does not form any irreconcilable conflict with W.Va.Code, 61–6–11.

Under W.Va.Code, 30–18–6, there is an express exemption from the licensing requirement for "any law-enforcement officer of the State, or any county, city, town or village thereof, while engaged in the performance of his official duties." It is apparent that the intent of this exemption is to exclude persons who are properly empowered to perform police duties from the licensing provisions. This exemption is compatible with the provisions of W.Va. Code, 61–6–11, which is designed to preclude nonresidents from performing police duties.

■ As we have previously noted, W.Va. Code, 61–6–11, prohibits nonresidents from engaging in "police duty" and from aiding or assisting in any way "in the execution of the laws of this State." W.Va.Code, 30–18–1 through –8, allows for the licensing of nonresidents to perform the specified activities. It does not deal with the performance of police duties or the aiding in the execution of the laws of this State, which is the main focus of W.Va.Code, 61–6–11. Consequently, we find that the legislature when it enacted the licensing statute for private detectives, investigators, and guards, W.Va.Code, 30–18–1 through –8, did not intend to implicitly repeal W.Va. Code, 61–6–11.

■ Although the coal companies raise a privileges and immunities argument under Article IV, Section 2 of the United States Constitution,[6] we decline to address the issue for several reasons. First and foremost, the issue was not presented and, therefore, not passed upon by the circuit court. This ordinarily forecloses our review of the issue as stated in Syllabus Point 2 of *Duquesne Light Co. v. State Tax Dept.,* 174 W.Va. 506, 327 S.E.2d 683 (1984): " 'This Court will not pass on a nonjurisdictional question which has not been decided by the trial court in the first instance.' Syllabus Point 2, *Sands v. Se-*

---

4. W.Va.Code, 30–18–1, provides in pertinent part:

"No person, firm, company, partnership or corporation shall engage in the business of private detective or investigator or the business of watch, guard or patrol agency for the purpose of furnishing guards, patrolmen, or other persons to protect persons or property or to prevent the theft or the unlawful taking of goods, wares, merchandise, money, bonds, stocks, documents and other articles of value . . . without having first obtained from the office of the secretary of state a license to do so."

5. The remaining sections of the statute relate to the renewal of the license (W.Va.Code, 30–18–4); the secretary of state's authority to promulgate rules and hold hearings (W.Va.Code, 30–18–5); the application of the statute to exempt individuals and organizations (W.Va.Code, 30–18–6); the disposition of the fees collected (W.Va.Code, 30–18–7); and the penalties for violating W.Va.Code, 30–18–1 (W.Va.Code, 30–18–8).

6. Article IV, Section 2 provides, in part, that "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."

*curity Trust Co.*, 143 W.Va. 522, 102 S.E.2d 733 (1958)." *See also West Virginia Dept. of Highways v. Delta Concrete Co.*, 165 W.Va. 398, 268 S.E.2d 124 (1980); *Dixon v. American Indus. Leasing Co.*, 157 W.Va. 735, 205 S.E.2d 4 (1974); Syllabus Point 1, *Pettry v. Chesapeake & O. Ry. Co.*, 148 W.Va. 443, 135 S.E.2d 729 (1964).

Paralleling this problem is the lack of a developed factual record which would enable us to make a fully reasoned decision with regard to the Privileges and Immunities Clause question.[7] In *United Building & Constr. Trades Council v. Mayor of Camden*, 465 U.S. 208, 223–224, 104 S.Ct. 1020, 1030, 79 L.Ed.2d 249, 262 (1984), the United States Supreme Court declined to make an ultimate resolution of the privileges and immunities question because of the lack of a developed factual record.

We therefore remand this case to the Circuit Court of Mingo County for further proceedings consistent with this opinion.

Reversed and Remanded.

McGRAW, Justice, concurring:

I take issue with the Court's decision to remand this case for further development of the record with regard to the coal companies' privileges and immunities argument. This is a purely legal question which can be resolved without further factual development. Indeed, in footnote 7, the opinion writer implicitly recognizes the frivolity of the claim. Accordingly, I would reverse the judgment of the circuit court on this ground. However, since there are other issues raised by the parties, but not addressed by the Court, including the possible criminal record of certain guards employed by the coal companies, which cannot

be resolved without a more detailed record than that presented in this appeal, I concur in the decision of the Court, as expressed in Justice Miller's opinion, to remand the case to the Circuit Court of Mingo County.

---

7. The usual justification for a claim that the State's action does not violate the Privileges and Immunities Clause is that the State had a substantial reason for its action and the discrimination placed against the nonresident bears a substantial relationship to the State's objective. *Supreme Court of New Hampshire v. Piper*, 470 U.S. 274, 288, 105 S.Ct. 1272, 1279, 84 L.Ed.2d 205, 213 (1985). *See also Sargus v. West Virginia Bd. of Law Examiners*, 170 W.Va. 453, 294 S.E.2d 440 (1982). It would seem that the State's objective under W.Va.Code, 61–6–11, to prevent nonresidents from engaging in police duty or aiding in the execution of the laws of this State, is substantial simply because it is doubtful that a nonresident would have any understanding or background in our laws. Furthermore, in-state residency for police or fire employment has been sustained under equal protection principles. *McCarthy v. Philadelphia Civil Service Comm'n*, 424 U.S. 645, 96 S.Ct. 1154, 47 L.Ed.2d 366 (1976). There is a recognized parallel between the Equal Protection and the Privileges and Immunities Clauses of the United States Constitution. L. Tribe, American Constitutional Law 411–12 (1978).