413 S.E.2d 699

**David JOHNSON and Christinena Johnson, Petitioners,**

v.

**Honorable Callie TSAPIS, Judge of the Circuit Court of Brooke County, and David B. Cross, Prosecuting Attorney for Brooke County, Respondents.**

No. 20477.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 6, 1991.

Decided Dec. 19, 1991.

Rehearing Denied Feb. 13, 1992.

Frank H. Fitch, III, Public Defender, Weirton, for petitioners.

David B. Cross, Prosecuting Atty., Wellsburg, for respondents.

Marc B. Chernenko, William E. Watson & Associates, Wellsburg, amicus curiae brief on behalf of Ernest L. Cooper, Jr.

Michael Edward Nogay, Selletti & Nogay, Weirton, amicus curiae brief on behalf of Eric Burdette & Jason Hamill.

MILLER, Chief Justice:

In this original proceeding in prohibition, the petitioners, David Johnson and Christinena Johnson, seek to prevent further proceedings against them in a criminal

prosecution in the Circuit Court of Brooke County. The circuit court denied the petitioners' motion to suppress certain evidence on the ground that it was obtained by a nonresident private investigator employed to assist the police in their investigations in violation of W.Va.Code, 61–6–11 (1923). The narrow issue is whether, with respect to the private investigator's activities, that statute is unconstitutional as violative of the Privileges and Immunities Clause of Article IV, Section 2 of the United States Constitution. We conclude that it is.

The facts are undisputed. On January 16, 1991, the petitioners were indicted on charges of delivery of marijuana, a controlled substance. The indictments were returned, in part, due to the testimony of a private investigator, James Craft. Mr. Craft, an Ohio resident, was employed by Professional Law Enforcement (PLE), an Ohio corporation which had been hired by Weirton Steel Corporation (Weirton Steel) to investigate reports of illegal drug trafficking inside its plant. PLE supplied undercover agents, including Mr. Craft, who were placed in jobs inside Weirton Steel's plant. The PLE agents reported to and were under the control of the Weirton Police Department at all times.

After the indictments were returned, the petitioners filed with the circuit court a motion to suppress all evidence obtained by the State as a result of the PLE agents' investigation. The petitioners asserted that the collection of such evidence by nonresidents is prohibited by W.Va.Code, 61–6–11, which makes it unlawful

"for any corporation, company, firm or person, under any circumstances, to knowingly engage or employ any person not a bona fide resident of this State, at the time of such employment, to do or perform police duty of any sort therein, or in any way to aid or assist in the execution of the laws of this State"

and

"for any person, not a bona fide resident of this State, as aforesaid, to do or perform, or to attempt to do or perform, any sort of police duty in this State, or, in any way, to aid or assist, or attempt to aid or assist, in the execution of the laws thereof." [1]

In reply, the State asserted that the statute was invalid in that it violated the Privileges and Immunities Clause. The circuit court agreed and denied the motion to suppress.

Article IV, Section 2, Clause 1 of the United States Constitution provides: "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in

---

**1.** W.Va.Code, 61–6–11, provides, in its entirety:

"It shall be unlawful for any officer in this State to knowingly engage or employ any person not a bona fide resident of West Virginia, at the time of such employment, to do or perform any police duty of any sort therein, or in any way to aid or assist in the execution of the laws of this State.

"It shall be unlawful for any corporation, company, firm or person, under any circumstances, to knowingly engage or employ any person not a bona fide resident of this State, at the time of such employment, to do or perform police duty of any sort therein, or in any way to aid or assist in the execution of the laws of this State."

"It shall be unlawful for any person, not a bona fide resident of this State, as aforesaid, to do or perform, or to attempt to do or perform, any sort of police duty in this State, or, in any way, to aid or assist, or attempt to aid or assist, in the execution of the laws thereof. Any officer, corporation, company, firm or person, violating any of the provisions of this or either of the two preceding para-

graphs shall be guilty of a misdemeanor, and, upon conviction thereof, shall be fined not less than five hundred nor more than five thousand dollars, and may, at the discretion of the court, be imprisoned in the county jail in the county in which the offense is committed not exceeding twelve months.

"All persons violating any of the provisions of the third paragraph of this section shall be taken and deemed to be rioters and shall be proceeded against in all respects as such, as provided for in sections one, two, three, four, five and six [§§ 61–6–1 to 61–6–6] of this article. If any person be killed by one or more rioters engaged with him at the time of such riot, such rioter or rioters shall be guilty of murder and punished as provided by law in other cases of murder: Provided, That nothing in this section shall be so construed as to interfere with the right and duty of the governor to call upon the President of the United States for aid in the enforcement of the laws, in cases provided for in the Constitution."

the several States." The purpose of the provision was to " 'fuse into one Nation a collection of independent, sovereign States.' *Toomer v. Witsell*, 334 U.S. 385, 395 [68 S.Ct. 1156, 1162, 92 L.Ed. 1460, 1471 (1948)." *Supreme Court of New Hampshire v. Piper*, 470 U.S. 274, 279, 105 S.Ct. 1272, 1276, 84 L.Ed.2d 205, 210 (1985). In *Hicklin v. Orbeck*, 437 U.S. 518, 524, 98 S.Ct. 2482, 2486–87, 57 L.Ed.2d 397, 403 (1978), the United States Supreme Court stated that the Clause was designed

" 'to place the citizens of each State upon the same footing with citizens of other States, so far as the advantages resulting from citizenship in those States are concerned. It relieves them from the disabilities of alienage in other States; it inhibits discriminating legislation against them by other States; it gives them the right of free ingress into other States, and egress from them; it insures to them in other States the same freedom possessed by the citizens of those States in the acquisition and enjoyment of property and in the pursuit of happiness; and it secures to them in other States the equal protection of their laws.' " [2] *Quoting Paul v. Virginia*, 8 Wall. (75 U.S.) 168, 180, 19 L.Ed. 357, 360 (1869).

Clearly, W.Va.Code, 61–6–11, discriminates against private investigators who are nonresidents of this state.[3] It prohibits nonresident private investigators from being employed by private corporations to assist in the performance of police work. We are directed to no similar provision which precludes the employment of West Virginia residents as private investigators for such purposes.

To determine whether such provisions violate the Privileges and Immunities Clause,

the Supreme Court has fashioned the following rule, stated succinctly in *Barnard v. Thorstenn*, 489 U.S. 546, 552–553, 109 S.Ct. 1294, 1299, 103 L.Ed.2d 559, 568 (1989):

"When a challenged restriction deprives nonresidents of a privilege or immunity protected by this Clause, it is invalid unless '(i) there is a substantial reason for the difference in treatment; and (ii) the discrimination practiced against nonresidents bears a substantial relationship to the State's objective.' *Supreme Court of New Hampshire v. Piper*, 470 U.S., at 284, 105 S.Ct., at 1278; see *Supreme Court of Virginia v. Friedman*, 487 U.S. [59, 65,] 108 S.Ct. 2260, 2264, 101 L.Ed.2d 56 [63–64] (1988). In deciding whether the discrimination bears a substantial relation to the State's objections, we consider, among other things, whether less restrictive means of regulation are available. *Piper, supra*, 470 U.S., at 284, 105 S.Ct., at 1278."

*See also United Bldg. & Constr. Trades Council v. Mayor & Council of Camden*, 465 U.S. 208, 104 S.Ct. 1020, 79 L.Ed.2d 249 (1984); *Toomer v. Witsell*, 334 U.S. 385, 68 S.Ct. 1156, 92 L.Ed. 1460 (1948).

It is well-settled that the ability to pursue employment in another state is a fundamental right protected by the Privileges and Immunities Clause. *See generally* 16A Am.Jur.2d *Constitutional Law* § 728 (1979 & Supp.1991); 1 R. Rotunda, J. Nowak & J.N. Young, *Treatise on Constitutional Law: Substance & Procedure* § 12.7 (1986 & Supp.1991). In *Toomer v. Witsell, supra*, for example, the Supreme Court invalidated a South Carolina statute that required nonresident commercial shrimpers to pay a license fee one hundred

---

**2.** In *Toomer v. Witsell*, 334 U.S. 385, 396, 68 S.Ct. 1156, 1162, 92 L.Ed. 1460, 1471 (1948), the Supreme Court noted:

" 'Indeed, without some provision of the kind removing from the citizens of each State the disabilities of alienage in the other States, and giving them equality of privilege with citizens of those States, the Republic would have constituted little more than a league of States; it would not have constituted the Union which now exists.' *Paul v. Virginia*, 1868, 8 Wall. [ (75 U.S.) ] 168, 180 [19 L.Ed. 357, 360]."

**3.** Although the Privileges and Immunities Clause uses the term "Citizens," it is well-established that the terms "citizen" and "resident" are interchangeable for purposes of most cases analyzed under Article IV, Section 2, Clause 1. *See, e.g., Supreme Court of Virginia v. Friedman*, 487 U.S. 59, 108 S.Ct. 2260, 101 L.Ed.2d 56 (1988); *United Bldg. & Constr. Trades Council v. Mayor & Council of Camden*, 465 U.S. 208, 104 S.Ct. 1020, 79 L.Ed.2d 249 (1984); *Austin v. New Hampshire*, 420 U.S. 656, 95 S.Ct. 1191, 43 L.Ed.2d 530 (1975); *Toomer v. Witsell, supra*.

times greater than that paid by South Carolina residents. The Court held that "one of the privileges which the clause guarantees to citizens of State A is that of doing business in State B on terms of substantial equality with the citizens of that State." 334 U.S. at 396, 68 S.Ct. at 1162, 92 L.Ed. at 1471. *See also Supreme Court of Virginia v. Friedman,* 487 U.S. 59, 108 S.Ct. 2260, 101 L.Ed.2d 56 (1988); *Supreme Court of New Hampshire v. Piper, supra.*

In *Hicklin v. Orbeck, supra,* the Court struck down an Alaska statute which required all Alaskan oil and gas leases, easements, right-of-way permits, and unitization agreements to contain a requirement giving hiring preference to residents over nonresidents. Quoting from *Ward v. Maryland,* 12 Wall. (79 U.S.) 418, 430, 20 L.Ed. 449, 452 (1871), the Court stated: "'[T]he clause plainly and unmistakably secures and protects the right of a citizen of one State to pass into any other State of the Union for the purpose of engaging in lawful commerce, trade, or business without molestation.'" 437 U.S. at 525, 98 S.Ct. at 2487, 57 L.Ed.2d at 404. In *United Building & Construction Trades Council v. Mayor & Council of Camden, supra,* the Court invalidated a city ordinance which required at least 40 percent of the employees of contractors and subcontractors working on city construction projects to be city residents. The Court stated that "the pursuit of a common calling is one of the most fundamental of those privileges protected by the Clause." 465 U.S. at 219, 104 S.Ct. at 1028, 79 L.Ed.2d at 259. *See*

also *Baldwin v. Fish & Game Comm'n,* 436 U.S. 371, 386, 98 S.Ct. 1852, 1861, 56 L.Ed.2d 354, 367 (1978) ("[A] nonresident's right to pursue a livelihood in a State other than his own ... is protected by the Privileges and Immunities Clause.").

Clearly, the provisions of W.Va.Code, 61–6–11, that exclude nonresident private investigators from employment in West Virginia with the police in conjunction with criminal investigations places a burden on the nonresident's ability to exercise his "fundamental" right to pursue employment in West Virginia.[4] The only reason advanced by the petitioners for this statutory prohibition on employment is that nonresident private investigators would not be sufficiently acquainted with our laws to properly abide by and enforce them.[5]

We do not believe a nonresident's presumed unfamiliarity with the laws of a state satisfies the substantiality test so as to justify excluding nonresident private investigators from employment of this nature in West Virginia. Familiarity with local rules was not deemed consequential in *Supreme Court of New Hampshire v. Piper, supra.* There, an otherwise qualified applicant was denied admission to the practice of law in New Hampshire because she was a resident of Vermont. One of the reasons advanced by the State for the residency requirement was that nonresidents were less likely to become and remain familiar with local rules and procedures. The United States Supreme Court dismissed the premise upon which the argument was based, stating:

**4.** The petitioners make no assertion that the occupation of being a private detective is not a privilege protected by the Clause. In *State v. Muegge,* 178 W.Va. 439, 442, 360 S.E.2d 216, 219 (1987), we commented on the law enforcement role played by private security forces:

"Private security forces today play an increasing role in the enforcement of our criminal laws, a traditional state function. A federal study shows that about one-half of the persons employed fighting crime in this country, or more than one million persons, are employed by the private sector. [W.] Ringel, *Searches & Seizures [, Arrests & Confessions] § 2.3(a)* [ (1986) ]. Private security police regularly investigate criminal activity and often play a role which goes beyond the protection

of their employer's property interests." (Citation omitted).

**5.** The petitioners rely on note 7 of *Trumka v. Clerk of Circuit Court,* 175 W.Va. 371, 375, 332 S.E.2d 826, 830 (1985), where we stated:

"It would seem that the State's objective under W.Va.Code, 61–6–11, to prevent nonresidents from engaging in police duty or aiding in the execution of the laws of this State, is substantial simply because it is doubtful that a nonresident would have any understanding or background in our laws."

In *Trumka,* however, we expressly declined to decide the Privileges and Immunities Clause issue. The statement in note 7 is, therefore, merely dictum.

"There is no evidence to support appellant's claim that nonresidents might be less likely to keep abreast of local rules and procedures. Nor may we assume that a nonresident lawyer—any more than a resident—would disserve his clients by failing to familiarize himself with the rules." 470 U.S. at 285, 105 S.Ct. at 1279, 84 L.Ed.2d at 214.

*See also O'Reilly v. Board of Appeals,* 942 F.2d 281 (4th Cir.1991) (supposed unfamiliarity with geography of area not substantial reason for denying nonresident taxi license). In *Piper,* as here, there was no showing that "non-citizens constitute a peculiar source of the evil at which the statute is aimed." *Toomer v. Witsell,* 334 U.S. at 398, 68 S.Ct. at 1163, 92 L.Ed. at 1472. *See Hicklin v. Orbeck, supra.*

Moreover, there are other less restrictive alternatives to residency which will serve the State's interest in insuring the competence of nonresident private investigators. Presently, they are required to meet licensing standards contained in W.Va.Code, 30–18–1 *et seq.* To be licensed in West Virginia, any applicant must meet a number of qualifications under W.Va.Code, 30–18–2, including the following:

"Every such applicant ... if he be a person, or, in the case of a firm, partnership or corporation, at least one member of such firm, partnership or corporation, has been regularly employed as a detective and shall have been a member of any United States government investigative service, a sheriff or member of a city or state police department, for a period of not less than three years, or shall have had at least one year's training in investigative work at an accredited college or university or licensed private detective agency."

This requirement provides some assurance of professional training.[6]

In *Sargus v. West Virginia Board of Law Examiners,* 170 W.Va. 453, 294 S.E.2d 440 (1982), an Ohio resident had applied to the West Virginia State Bar for admission to the practice of law, but was refused the opportunity to take the bar examination, allegedly on the ground that she had not been a West Virginia resident for thirty days prior thereto as required by the Bar's rules of admission. Although we recognized the State's substantial interest in protecting the public from unqualified attorneys,[7] we noted that

"[t]here are less intensive methods of maintaining a competent bar other than requiring the residence of an applicant in this State for a period of time prior to taking the bar examination.

\* \* \* \* \* \*

"[T]he requirement that an applicant pass the bar examination should suffice to acquaint him or her with the local law." 170 W.Va. at 458, 294 S.E.2d at 445.

Other alternatives recognized by the United States Supreme Court as sufficient to insure a competent bar include mandatory continuing legal education, *Supreme Court of New Hampshire v. Piper, supra;* and requiring the attorney to maintain an office and regular practice in the state, *Supreme Court of Virginia v. Friedman, supra* (where applicant sought admission without taking bar examination).

Finally, in *State v. Muegge,* 178 W.Va. 439, 442–43, 360 S.E.2d 216, 220 (1987), we recognized that private security persons employed under the mantle of state authority will be held to the same observance of constitutional protections as regularly employed police officers: "The unfettered conduct of private security personnel represents a threat to the rights of our citizens which is equivalent to any unlawful conduct of public police officers, and the application of constitutional protections to their conduct should have a deterrent effect on the unlawful practices of these security personnel." (Citation omitted).

The private investigators in this case were doing much the same type of work as the Navy's investigative officers were do-

---

6. No issue is raised as to whether Mr. Craft and the other PLE agents were in compliance with the provisions of our licensing statute.

7. *See West Virginia State Bar v. Earley,* 144 W.Va. 504, 109 S.E.2d 420 (1959).

ing in *State v. Maxwell*, 174 W.Va. 632, 328 S.E.2d 506 (1985), where we held in Syllabus Point 1:

> "West Virginia Code § 61–6–11 (1984) does not prohibit West Virginia law enforcement officers from coordinating their activities with another law enforcement agency conducting an investigation in West Virginia."

*See also State v. Presgraves*, 174 W.Va. 683, 328 S.E.2d 699 (1985).

For the reasons stated herein, we conclude that W.Va.Code, 61–6–11, violates the Privileges and Immunities Clause insofar as it prohibits nonresident private investigators from being employed by a corporation to investigate drug trafficking or other criminal activity on the corporation's West Virginia premises.

We do not attempt to assess in what other situations this statute might be found

to be unconstitutional.[8] Thus, our holding is limited to nonresident private investigators. The statute is invalid to that extent and cannot be used as a basis for excluding evidence gathered by nonresident private investigators pursuing their livelihood in this State.

The petitioners have failed to demonstrate their right to the writ of prohibition prayed for. Accordingly, the writ of prohibition is denied, and the rule to show cause heretofore issued is dismissed.

Writ denied.

---

**8.** The petitioners point to several cases in which municipal ordinances requiring city employees to be residents of the city were upheld. *McCarthy v. Philadelphia Civil Serv. Comm'n*, 424 U.S. 645, 96 S.Ct. 1154, 47 L.Ed.2d 366 (1976) (fireman); *Detroit Police Officers Ass'n v. City of Detroit*, 385 Mich. 519, 190 N.W.2d 97 (1971), *appeal dismissed*, 405 U.S. 950, 92 S.Ct. 1173, 31 L.Ed.2d 227 (1972) (police officers). *See Wardwell v. Board of Educ.*, 529 F.2d 625 (6th Cir.

1976) (teacher). We note that in each case the validity of the ordinance was challenged on Equal Protection or Due Process grounds. *See Trumka v. Clerk of Circuit Court*, 175 W.Va. at 375 n. 7, 332 S.E.2d at 830 n. 7. We decline to address these issues as we have already found the statute unconstitutional as to nonresident private investigators under the Privileges and Immunities Clause.