475 S.E.2d 27

**Helen RUBY, Appellant Below, Appellant,**

v.

**INSURANCE COMMISSION OF WEST VIRGINIA, Appellee Below, Appellee.**

**No. 23037.**

Supreme Court of Appeals of West Virginia.

Submitted April 23, 1996.

Decided June 13, 1996.

Michael R. Cline, Charleston, for Appellant.

Donna S. Quesenberry, Associate Counsel, West Virginia Insurance Commission, Charleston, for Appellee.

PER CURIAM:

Helen Ruby appeals the decision of the Circuit Court of Kanawha County finding that the termination of her employment with the Insurance Commission of West Virginia was caused by a reduction-in-force and not in retaliation for her testimony against the Insurance Commission in another unrelated matter. On appeal, Ms. Ruby argues that the record, by preponderating evidence, shows that her employment termination was retaliatory. Ms. Ruby specifically relies on a conversation between her and Thomas Trent, a lawyer for the Insurance Commission in the other unrelated matter, which was overheard by a co-worker. The Insurance Commission maintains that Ms. Ruby's dismissal was necessitated by a budget problem that required the elimination of the position Ms. Ruby held. Because the record supports the circuit court's decision that Ms. Ruby's dismissal resulted from a reduction-in-force, we affirm the decision of the circuit court.

## I.

## FACTS AND PROCEDURAL BACKGROUND

Ms. Ruby was first employed by the Insurance Commission in February 1964. At the time of her dismissal on January 28, 1983 [1], the Insurance Commission employed Ms. Ruby as one of two paralegal clerks.[2] During Ms. Ruby's employment, another employee, George Conner, was dismissed by Robert Shaw, who then was the West Virginia Insurance Commissioner. Ms. Ruby alleges that Thomas Trent, Esq., a West Virginia Assistant Attorney General who was representing the Insurance Commission in the George Conner case (hereinafter the Conner matter), told her not to testify on behalf of Mr. Conner and threatened her with dismissal if she testified. Pursuant to a subpoena, Ms. Ruby testified at Mr. Conner's civil service hearing. Mr. Conner's reinstatement with backpay was ordered by the circuit court on November 8, 1982. Ms. Ruby contends that the atmosphere of her workplace became negative toward her after Mr. Conner's reinstatement.[3] Ms. Ruby also notes that after almost nineteen (19) years of service, she was given no notice of her dismissal, which occurred about two and a half (2½) months after Mr. Conner's reinstatement.

On January 28, 1983, the Insurance Commission dismissed Ms. Ruby claiming her layoff resulted from a reduction-in-force necessitated by a statewide revenue short-fall. During fiscal year 1982–83, the economy of West Virginia experienced a prolonged cyclical downturn. On November 18, 1982, then Governor Rockefeller imposed a spending and hiring freeze on all state agencies and ordered a three (3) percent reduction in spending authority. On January 5, 1983, because of the bleak economical situation, the Governor requested all spending state agencies to submit proposals reflecting reductions of thirteen (13) and seven and a half (7.5) percent of their spending authority for fiscal year 1982–83. On January 10, 1983, the Insurance Commission submitted its proposals. On January 13, 1983, the Governor issued Executive Order 4–83 imposing a ten (10) percent reduction for fiscal year 1982–83 and requested all spending agencies to submit revised expenditure schedules by January 17, 1983. Executive Order 4–83 noted that "layoffs will be necessary throughout State government."

In response to Executive Order 4–83, the Insurance Commission reduced its non-personnel accounts, namely, the equipment account, by forty (40) percent and the current expenses account, by fourteen (14) percent. Because these reductions resulted in an overall budget reduction of three (3) percent, in order to comply with Executive Order 4–83, the Insurance Commission had to reduce its personnel account by seven (7) percent to achieve the required overall goal of a ten (10) percent reduction. After considering the agency's statutory and regulatory obligations, the Insurance Commissioner decided to layoff the two employees in the paralegal assistant class. Except for the legal division, all the other division directors in the Insurance Commission requested that the cuts come from another division because of the work handled by that division. Cheryl Davis, Esq., the legal division's director, indicated that with some clerical assistance her division would be able to function without the two paralegals. The Insurance Commission maintains that because Mrs. Ruby was employed as a paralegal, her dismissal was the direct result of Executive Order 4–83. During fiscal year 1982–83, the Insurance Commission notes that a total of 554 state employees in classified service were dismissed because of the budget cuts.

1. Because of Ms. Ruby's accumulated annual leave, her last official day on the payroll was March 17, 1983.

2. The other paralegal clerk had been employed with the Insurance Commission less than six months, and his employment was also terminated on January 28, 1983.

3. According to a November 17, 1982 letter to Mr. Trent from Commissioner Shaw, the Commissioner had received the circuit court's opinion in the Conner matter. However, apparently Mr. Conner did not return to work until July 1, 1983 according to a June 27, 1983 letter to Mr. Conner from Commissioner Shaw which also indicated Mr. Conner's salary and job title.

We note that the parties agree that in fiscal year 1982–83, there was a statewide economic crisis and the parties also agree that all civil service regulations relating to the alleged reduction-in-force were fully complied with in Ms. Ruby's case.

Ms. Ruby's appeal of her dismissal to the West Virginia Civil Service Commission (hereinafter the Civil Service Commission) on February 24, 1983 began the long and involved process that finally resulted in her present appeal before this Court. On March 31, 1983, the Civil Service Commission dismissed Ms. Ruby's appeal without a hearing. Because she was denied a hearing, Ms. Ruby appealed to the circuit court, which by order entered on May 17, 1984, required the Civil Service Commission to hold a hearing. The Insurance Commission appealed the May 17, 1984 order to this Court, which on February 28, 1985, declined to hear the appeal. *Ruby v. Department of Insurance, appeal refused,* No. 850058A (Feb. 28, 1985). After the Civil Service Commission granted Ms. Ruby an appeal date, on July 30, 1986, the Civil Service Commission, because of questions concerning the scope of the hearing, requested the circuit court to specify the matters to be heard.

On April 30, 1990, the circuit court entered an order referring the matter to the West Virginia Education and State Employees Grievance Board for a hearing on "whether or not there was just cause for dismissal of Helen Ruby as an employee of the West Virginia Department of Insurance." The Insurance Commission, alleging that the Grievance Board lacked subject matter jurisdiction because the State Personnel Board had been vested with the duties and responsibilities formerly possessed by the Civil Service Commission, moved the circuit court to dismiss its referral to the Grievance Board. After the motion was denied, the Grievance Board held a hearing on January 15 and 16, 1992. After the Grievance Board ruled in favor of Ms.

Ruby, the Insurance Commission again asserting the Grievance Board's lack of jurisdiction appealed to the circuit court.

By order entered on May 21, 1993, the circuit court referred the matter to the State Personnel Board for a hearing on the allegations. The circuit court's order required the State Personnel Board "to consider the evidence and testimony adduced at the January 16 and 17, 1992 hearings before the Grievance Board" and to consider additional evidence or testimony. On December 15, 1993, the State Personnel Board held a hearing on the matter and on March 17, 1994 entered an order denying Ms. Ruby's appeal. Ms. Ruby appealed the State Personnel Board's ruling to the circuit court, which by order entered on November 22, 1994, affirmed the decision of the State Personnel Board and dismissed the case.[4]

Ms. Ruby then appealed to this Court contending that the record shows she was fired in retaliation for her testimony and that the chairman of the State Personnel Board improperly commented on this case's issues during the hearing before the State Personnel Board.

## II

### STANDARD OF REVIEW

■ In civil cases, "[t]his Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo.*" Syl. pt. 4, *Burgess v. Porterfield,* 196 W.Va. 178, 469 S.E.2d 114 (1996). This general standard of review has been applied to a circuit court's order adopting a family law master's recommendations (*see* Syl. pt. 1, *Burnside v. Burnside,* 194 W.Va. 263, 460 S.E.2d 264 (1995)) and to a circuit court's civil contempt order (*see* Syl. pt. 1, *Carter v. Carter,* 196 W.Va. 239, 470 S.E.2d 193 (1996)).

---

4. Ms. Ruby also sued the Insurance Commissioner, Mr. Shaw, Mr. Trent and Mr. Clark in federal court for $5,000,000 in compensatory and punitive damages. *Ruby v. Insurance Commissioner of W.Va.,* No. 2:84–2033 (S.D.W.Va. filed Jan. 1, 1984). By stipulation entered on July 17, 1987, the parties agreed to dismiss, without prejudice,

the suit pending a final order of "the courts of the State of West Virginia." The stipulation was signed by Mr. Herndon as Counsel for Ms. Ruby.

Ms. Ruby contends that although Mr. Herndon was no longer her attorney, he signed the stipulation as a favor to her.

In this case, the circuit court reviewed the decision of the State Personnel Board holding that Ms. Ruby did not prove that her dismissal was a retaliatory discharge. A circuit court's review of an order or decision of an agency is limited by W.Va. Code 29A–5–4(g) (1964), which provides:

The court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decision or order are:

(1) In violation of constitutional or statutory provisions; or

(2) In excess of the statutory authority or jurisdiction of the agency; or

(3) Made upon unlawful procedures; or

(4) Affected by other error of law; or

(5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

In Syl. pt. 2 of *Shepherdstown Volunteer Fire Dept. v. State ex rel. State Human Rights Commission*, 172 W.Va. 627, 309 S.E.2d 342 (1983), we stated:

Upon judicial review of a contested case under the West Virginia · Administrative Procedure Act, Chapter 29A, Article 5, Section 4(g), the circuit court may affirm the order or decision of the agency or remand the case for further proceedings. The circuit court shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decisions or order are: "(1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory authority or jurisdiction of the agency; or (3) Made upon unlawful procedures; or (4) Affected by other error of law; or (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or (6) Arbitrary or capri-

cious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

Although an agency's interpretation of the law in subject to a *de novo* review, the review of an agency's findings of fact is limited. Syl. pt. 1 of *Francis O. Day Company Inc. v. Director, Division of Environmental Protection*, 191 W.Va. 134, 443 S.E.2d 602 (1994) states: "Evidentiary findings made at an administrative hearing should not be reversed unless they are clearly wrong." In Syl. pt. 2, *Vosberg v. Civil Service Comm'n of W.Va.*, 166 W.Va. 488, 275 S.E.2d 640 (1981), we stated:

"A final order of the Civil Service Commission based upon a finding of fact will not be reversed by this Court upon appeal unless it is clearly wrong." Syl. pt. 2, *Brown v. Civil Service Commission*, 155 W.Va. 657, 186 S.E.2d 840 (1972) citing Syl., *Billings v. Civil Service Commission*, 154 W.Va. 688, 178 S.E.2d 801 (1971).

In *Frank's Shoe Store v. W.Va. Human Rights Commission*, 179 W.Va. 53, 56, 365 S.E.2d 251, 254 (1986), we discussed the "extremely limited scope of review" of an agency's findings of fact by stating the following:

[A] reviewing court must evaluate the record of the agency's proceeding to determine whether there is evidence on the record as a whole to support the agency's decision. The evaluation is conducted pursuant to the administrative body's findings of fact, regardless of whether the court would have reached a different conclusion on the same set of facts. *Anderson v. City of Bessemer City*, 470 U.S. 564, 574–75, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518, 528 (1985).

\* \* \* \* \* \*

Pursuant to *W.Va.Code*, 29A–5–4(g)(5) [1964], the rejection of administrative findings is sanctioned only when "an order of an administrative body based upon a finding of facts . . . is contrary to the evidence, or is not supported by the evidence or is based upon a mistake of law, . . ." *Guine v. Civil Service Commission*, 149 W.Va. 461, 469, 141 S.E.2d 364, 369 (1965). Otherwise, if in reviewing administrative deci-

sions or orders in contested cases, the courts routinely substitute their judgments for those of the agencies, the utility of administrative adjudication would be lost. A. Neely, *Administrative Law In West Virginia* § 5.57 at 438 (1982). *See* Syl. pt. 1, *W.Va. Human Rights Comm'n v. United Transportation Union, Local 655*, 167 W.Va. 282, 280 S.E.2d 653 (1981) (applying a limited review to the Human Rights Commission's findings of fact).

In this case, Ms. Ruby alleges the following two assignments of error: first, the factual findings made by the State Personnel Board and adopted by the circuit court are not supported by "the substantial, reliable, and probative evidence on the record;" and second, the statements of the State Personnel Board's Chairman show that the State Personnel Board acted in an arbitrary or capricious manner.

Mindful of our standards of review, we review the record in this case to determine: first, if the Board's findings of fact are supported by substantial evidence in the record; and second, if statements of the Board's Chairman show an arbitrary or capricious abuse of discretion, or a clearly unwarranted exercise of discretion.

## III

## DISCUSSION

### A. Factual Findings

In support of Ms. Ruby's allegation that the Insurance Commission used the reduction-in-force as a pretextual means to fire her because of her testimony against the Insurance Commission, Ms. Ruby emphasizes the following: (1) Mr. Trent's threat of retaliation if she testified against the Insurance Commission in a matter involving Mr. Connor (Mr. Trent's threat that "people who did such things [testify against the Insurance Commission] usually found themselves out of a job" was overheard by a co-worker); (2) the message given by Mr. Trent to Stephen Herndon, who was then Ms. Ruby's lawyer, that she "was selecting the wrong side in a fight ... [and] if she continued to select the wrong side in the fight, he [Mr. Trent] felt she would probably be getting into trouble"; (3) a change in workplace atmosphere after Ms. Ruby's testimony and the statement by Ms. Ruby's supervisor that "people weren't too pleased with her;" (4) statements made to the other paralegal that he would "probably be the only paralegal who'll be here;" (5) the personalities of the Insurance Commission's employees who were involved in discharging/laying off Ms. Ruby; and (6) the circumstances surrounding Ms. Ruby's discharge/layoff, namely, her immediate dismissal, the subsequent refusal to allow her on the work site, and a threat concerning her future employability.

The Insurance Commission emphasizes that Ms. Ruby's dismissal was part of a reduction-in-force caused by a statewide economic crisis. The Insurance Commission maintains that there was no conspiracy to fire Ms. Ruby because of her testimony in another matter. As contrary to the conspiracy theory, the Insurance Commission emphasizes the following: (1) Ms. Ruby was awarded a merit increase in July 1982, which was after her testimony in the Conner matter; (2) Ms. Ruby was one of two persons in a paralegal position whose positions were eliminated; (3) Ms. Ruby was given a letter of recommendation thanking her for her work when her employment ceased; (4) the required budget cuts in the Insurance Commission could only be dealt with by laying off personnel; (5) other employees who testified in the Connor matter were not discharged; and (6) the Insurance Commission's decision on where to cut personnel costs had a rational basis, given the recommendations of the Commission's Directors, especially Ms. Davis' recommendation to layoff two paralegals, one of whom was Ms. Ruby, and the Commission's regulatory requirements and public service.

In *Shepherdstown Volunteer Fire Dept. v. State ex rel. W.Va. Human Rights Comm'n, supra* (concerning discrimination in employment, namely hiring, and "place[s] of public accommodations") and *Frank's Shoe Store v. Human Rights Comm'n, supra* (concerning discrimination in employment, namely discharge), cases arising under the West Virginia Human Rights Acts, we set forth

some guidelines, which can be applied in a case alleging retaliatory discharge, such as this case. Our holdings in *Shepherdstown Volunteer Fire Dept. v. State ex rel. State Human Rights Comm'n* and *Frank's Shoe Store v. Human Rights Comm'n* outlined the types of objective facts which courts have considered in inferring a motive. Those objective facts and the burdens of each party were stated in Syl. pt. 3 of *Shepherdstown Volunteer Fire Dept. v. State ex rel. State Human Rights Comm'n,* which states:

> In an action to redress unlawful discriminatory practices in employment and access to "place[s] of public accommodations" under the West Virginia Human Rights Act, *as amended, W.Va.Code,* 5–11–1 *et seq.,* the burden is upon the complainant to prove by a preponderance of the evidence a prima facie case of discrimination, which burden may be carried by showing (1) that the complainant belongs to a protected group under the statute; (2) that he or she applied and was qualified for the position or opening; (3) that he or she was rejected despite his or her qualifications; and (4) that after the rejection the respondent continued to accept the applications of similarly qualified persons. If the complainant is successful in creating this rebuttable presumption of discrimination, the burden then shifts to the respondent to offer some legitimate and nondiscriminatory reason for the rejection. Should the respondent succeed in rebutting the presumption of discrimination, then the complainant has the opportunity to prove by a preponderance of the evidence that the reasons offered by the respondent were merely a pretext for the unlawful discrimination.

*See,* Syl. pt. 4, *Frank's Shoe Store v. Human Rights Comm'n, supra* (outlining similar elements to establish a *prima facie* case of retaliatory discharge: "(1) that the complainant engaged in protected activity, (2) that complainant's employer was aware of the protected activities, (3) that the complainant was subsequently discharged and (absent other evidence tending to establish a retaliatory motivation) (4) that complainant's dis-charge followed his or her protected activities within such period of time that the court can infer retaliatory motivation").

In this case, we note that Ms. Ruby established a *prima facie* case showing a retaliatory motive. The parties acknowledge that Ms. Ruby testified against the Insurance Commission in the Connor matter and that Mr. Trent, the attorney for the Insurance Commission in that matter, requested Ms. Ruby not to testify. However, Mr. Trent maintained that the incident occurred when he and Ms. Ruby were joking around and that no threat was intended. Ms. Ruby's version of the threat is supported by the testimony of a co-worker who overhead the conversation. This is the most damaging evidence against the Insurance Commission because it establishes a retaliatory motive. In addition, Ms. Ruby was dismissed shortly after Mr. Connor's return to work was ordered, thereby giving rise to an inference of a retaliatory motive. Ms. Ruby also offered other supporting evidence, including the testimony of Mr. Herndon, her former lawyer, and the way her dismissal was handled by the Insurance Commission. The Insurance Commission presented evidence impeaching Mr. Herndon and explaining the reason for Ms. Ruby's immediate dismissal.[5]

Having established a *prima facie* case, the burden shifts to the Insurance Commission to show that it had a legitimate, non-retaliatory reason for dismissing Ms. Ruby. In this case, the Insurance Commission presented substantial evidence that Ms. Ruby's dismissal resulted from a reduction-in-force necessitated by a statewide economic crisis. The Insurance Commission also presented evidence of the process it used to determine, first, if layoffs were required and, second, which jobs to eliminate. At each step, the Insurance Commission presented a rational explanation for its action showing that it had a legitimate, non-retaliatory reason for dismissing Ms. Ruby. In addition, Ms. Ruby was granted a merit increase after her testimony in the Conner matter and other employees who testified for Mr. Conner were not dismissed.

---

**5.** *See* note 4 for information concerning Mr. Herndon's representation of Ms. Ruby in a simi-lar suit in federal court.

The burden then shifted back to Ms. Ruby "to prove by a preponderance of the evidence that the reasons offered by the respondent were merely a pretext for the unlawful" retaliatory discharge. Syl. pt. 3, in part, *Shepherdstown Volunteer Fire Dept. v. State ex rel. State Human Rights Comm'n, supra.* In *Vosberg v. Civil Service Comm'n of W.Va.,* 166 W.Va. at 494–95, 275 S.E.2d at 643, we stated:

> A state employee who has acquired permanent civil service status bears the burden of proof that his dismissal, or other action, was arbitrary and capricious. Syl. pt. 1, *Childers v. Civil Service Commission, supra,* [155 W.Va. 69, 181 S.E.2d 22 (1971) ] *Caldwell v. Civil Service Commission, supra,* [155 W.Va.] at 421, 184 S.E.2d 625.

 Under the procedures used by the Insurance Commission to determine which jobs to eliminate, the linch-pin was the testimony of Cheryl Davis, Esquire, General Counsel and Director of the Legal Division. Ms. Davis testified that she identified the two paralegals in her division as employees whose layoff would not impair the efficient operation of her department.[6] No other director of any division in the Insurance Commission thought they could operate efficiently with two fewer workers.[7] Given the structure of the Insurance Commission and the recommendations of its Directors, especially Ms. Davis' recommendation, the Insurance Commission showed that Ms. Ruby's layoff resulted from a reduction-in-force. The Insurance Commission also presented evidence that the work done by the Legal Division was not adversely affected by the reduction-in-force. Ms. Ruby never presented any evidence repudiating this key evidence of a rational and legitimate reason for her layoff. Ms. Ruby did not prove that her "dismissal was arbitrary and capricious" as required by

6. Ms. Davis gave the following testimony concerning her recommendation for layoffs:

> Q (Keith Huffman, Esq., Counsel for the Insurance Commission) Do you recall, at least to your knowledge, what procedure was used in selecting possible candidates that would be laid off in the reduction in force that took place?
>
> A Hanley Clark came to me and told me that either there were going to be layoffs or that layoffs were being contemplated—I don't recall which.—and that I was to identify employees within my division who, if their layoff would occur, the division could still continue to function efficiently.
>
> Q Do you recall how many employees you were supposed to identify?
>
> A I think two.
>
> Q Okay. How did you respond to that inquiry?
>
> A I told Hanley that ... I mean this was a subsequent conversation after I gave it some thought that, if both Helen and the other paralegal, Joe Saunders, were laid off that *I felt that I could continue to do my job provided I was given adequate clerical assistance elsewhere in the Department.*
>
> Q Okay. Was that decision in any way motivated by any personal animosity toward Ms. Ruby or Mr. Saunders?
>
> A No.
>
> Q Were you involved in the decision making process which eventually led to the reduction in force in January of 1983 other than what you just related?
>
> A No. I just made my recommendation and the decision concerning the layoffs were [sic] made elsewhere.

> Q Do you recall if, at the time that the reduction in force took place, you were aware of any issue in the Department about whether or not Ms. Ruby had given testimony at the Conner proceeding involving Mr. George Conner?
>
> A I cannot recall when I became aware of the situation with George Conner. It may have been shortly before he came back to the Department. I just can't place that in the sequence of things.
>
> Q Did your recommendation to Mr. Clark as to what individuals in your department you would recommend. for the layoff if that had to occur, was that in any way motivated by the Conner matter?
>
> A Absolutely not. The situation with George Conner had nothing to do with my recommendation concerning layoffs.
>
> (Emphasis added.)

.7. In addition to the legal division, the Insurance Commission had the following divisions: the Rates and Forms Division (layoffs would have affected the clerical positions responsible for categorizing and preparing all rate and form filings for review by the Agency), Financial Conditions Division (layoffs would have affected the positions responsible for processing the premium taxes and annual statements of insurance companies), and the Consumer Services Division (layoffs would have affected two consumer service representatives who were dealing with a backlog of complaints as well as an increase in new complaints).

*Vosberg v. Civil Service Comm'n of W. Va.,* 166 W.Va. at 494–95, 275 S.E.2d at 643.

On appeal, Ms. Ruby maintains that the State Personnel Board's decision was "[c]learly wrong in view of the reliable, probative and substantial evidence on the whole record." W.Va.Code 29A–5–4(g)(5) (1964). Under W.Va.Code 29A–5–4(g) (1964), the scope of review of an agency's decision is limited.[8] *See* Syl. pt. 2, *Shepherdstown Volunteer Fire Dept. v. State ex rel. State Human Rights Comm'n, supra.* Given the limited scope of review of an administrative body's findings of fact, we agree with the circuit court that the record as a whole supports the State Personnel Board's decision that Ms. Ruby was dismissed as part of a reduction-in-force. We decline to reverse the evidentiary findings of the State Personnel Board because, based on our review of the record, those findings are not clearly wrong. *See* Syl. pt. 1, *Francis O. Day Company Inc. v. Director of Environmental Protection, supra; Vosberg v. Civil Service Comm'n of W.Va., supra.*

B. Arbitrary and Capricious Decision

Ms. Ruby also argues that the chair of the State Personnel Board denied her a fair hearing by commenting on the evidence and her legal and factual theories. Ms. Ruby cities to an exchange between her lawyer and Roger Morgan, temporary chair, in which Mr. Morgan instructed Ms. Ruby's lawyer to stop characterizing Ms. Ruby's removal as a "discharge." However, Mr. Morgan continued by saying that "you have a perfect right to assert your claim, but I think that is not what Mr. Shaw (the Insurance Commissioner in 1983) did." [9]

The Insurance Commission argues that merely because Ms. Ruby was requested not to use the conclusive word "discharge," there is no showing that a full and fair hearing was denied. During the hearing, Ms. Ruby presented evidence of "retaliation" or "reprisal" as the motivation for the termination of her employment. The Insurance Commission also notes that Ms. Ruby in her 1983 Civil Service Petition admitted that she was "laid-off."

■ Because the record indicates that Ms. Ruby was given a full and fair hearing before the State Personnel Board, we find that the chair's refusal to allow the characterization of Ms. Ruby's removal as a "discharge" is not, standing alone, sufficient evidence of bias to indict the entire hearing. There is nothing else in the record indicating that the chair's refusal to allow Ms. Ruby's lawyer to use the word "discharge" was anything other than an effort toward requiring precise language.

■ Generally we review assignments of error concerning comments to determine if comments were prejudicial or affected the substantial rights of the parties. *See* W.Va. Code 29A–5–4(g) (1964) *supra* Sec. II; *Torrence v. Kusminsky,* 185 W.Va. 734, 743, 408 S.E.2d 684, 693 (1991) (finding no prejudice to a jury in a medical malpractice case in which the court "reminded counsel that he would 'have an opportunity to redirect or rehabilitate' the doctor"); *Riggle v. Allied Chemical Corp.,* 180 W.Va. 561, 378 S.E.2d 282 (1989) (no prejudice found in the trial judge's gestures and tone of voice while re-

---

8. *See* Sec. II, *supra* for text of W.Va.Code 29A–5–4(g).

9. The following exchange was cited by Ms. Ruby:
BY MR. CLINE:
Q Ms. Ruby, at the time of your discharge from the Department of Insurance, what was the—
TEMPORARY CHAIRMAN (Roger Morgan):
Again, you characterize this as a discharge. It's very clear from the evidence that Ms. Ruby was not discharged.
She was let go in a reduction in force, and it was very clear that Mr. Shaw wrote her a complimentary letter, offered to give her a recommendation and thanked her for her work.

She had just been given a merit raise before that. There's nothing in this record to show discharge, to characterize it as discharge. She was removed and you have a perfect right to assert your claim, but I think that is not what Mr. Shaw did.
I mean, his letter to her is anything but a discharge. I think that some other term is more appropriate, and I think it's mischaracterizing what the record is, to say she was discharged.
MR. CLINE: Well, let's put it this way: After you didn't work there anymore, the day that you quit working there. is that all right?
TEMPORARY CHAIRMAN: Sure.
MR. CLINE: All right.

reading the entire charge to the jury); *Fluharty v. Wimbush,* 172 W.Va. 134, 304 S.E.2d 39 (1983) (comments on witness credibility or weight to be given evidence may be reversible error).

Given that the matter was heard by an administrative agency, the chair should have granted Ms. Ruby's lawyer more leeway in his selection of language, but this semantic limitation, standing alone, does not, given the full hearing accorded Ms. Ruby, show that the hearing was "[a]rbitrary or capricious or characterized by abuse of discretion or [a] clearly unwarranted exercise of discretion" as required by W.Va.Code 29A–5–4(g)(6) (1964). We note that the circuit court also found no merit in this assignment of error.

Based on our review of the record, we find sufficient evidence to support the decision of the State Personnel Board that Ms. Ruby was dismissed because of a reduction-in-force necessitated by a statewide economic crisis and to find that Ms. Ruby was given a full and fair hearing before the State Personnel Board.

For the above stated reasons, we affirm the decision of the Circuit Court of Kanawha County.

Affirmed.